Tommy Payne, Plaintiff-Appellee, *v.* Don Meeker, Defendant-Appellant.

(No. 72-121;

Fifth District—March 29, 1973.

*Supplemental opinion upon denial of rehearing April 26, 1973.*

Edward M. Resch, of Casey, for appellant.

Elmer Jenkins and Jeff Troutt, both of Benton, for appellee.

PER CURIAM:

Defendant counter-claimant appeals from a decree in favor of plaintiff quieting title and dismissing defendant's counter-claim for a decree for specific performance of an agreement to sell real estate and personal property. Defendant-appellant will hereinafter be referred to as Meeker and plaintiff-appellee as Payne. We will note here that no issues have been raised regarding the sufficiency of any agreements to comply with the Statute of Frauds. Ill. Rev. Stat., ch. 59, sec. 2.

The parties were litigants in a prior action in the circuit court of Franklin County. That action was commenced by Meeker when he took a judgment by confession on a note given by Payne in payment for grain

storage bins Meeker had sold to Payne and erected on his 288 acre farm in Franklin County. Upon Payne's motion the judgment by confession was opened and Payne granted leave to file a counter-claim against Meeker for breach of contract for improper installation and other matters. At the adjournment of court on Friday, March 12, 1971, the court suggested to the parties that they try to reach some agreement and settle the case before the trial resumed on Monday, March 15. Both parties are in agreement that a meeting was held between Meeker and Payne on the farm in question on Sunday afternoon, March 14 and that as a result of that meeting a settlement of the previous case effected. The terms were that Meeker would buy the farm from Payne for $65,000, payable in cash, plus an additional $2,000 for some shop equipment, and that Meeker would dismiss his lawsuit against Payne and mark the judgment and claim paid in full. Payne was to furnish abstracts of title to the farm to Meeker. Here agreement on what transpired at the meeting ends. According to the testimony of Meeker in the case under consideration there were two agreements written out and signed at the March 14 meeting. One pertained to the sale of the equipment for $2,000, and that agreement was later introduced in evidence. The other pertained to the sale of the farm and was alleged to be in substantially this wording:

"March 13, 1971

Tommy Payne here by agrees to Sell said farm of 288 acres to Don Meeker for $65,000.00. To give possion [sic] Monday, March 15, 1971. Tommy here by acknowledges receiving $100.00 cash. Don Meeker agrees to pay $64,900.00 when abstracts are brought up to date and cleared. Tommy to pay 1970 taxes. Judgment to be cleared against Tommy.

/S/ DON MEEKER
/S/ TOMMY PAYNE"

Meeker further testified that he gave Payne a $100 bill at the time of the signing of the agreement "to make the contract."

Payne appeared in court on Monday morning, March 15 with his attorney. Meeker was not present but his attorney, Mr. Owens, was. The court was informed that a settlement of the case had been reached. Mr. Owens had not been advised of this by Mr. Meeker but at the suggestion of the court made telephone contact with Meeker and returned into court to confirm that settlement had been reached. Thereupon Payne took the witness stand and testified to the settlement of the case upon the above terms adding that the deed was to be for the surface only and that the payment was to be made by certified check on Friday,

March 20. In response to a question of the court Payne indicated that he accepted that offer of settlement and Mr. Owens in response to a question by the court indicated his concurrence and willingness to move to have the case dismissed. Thereupon the court dismissed the case with prejudice as to both parties.

After some telephone arrangements the parties met at the office of Mr. Jenkins, Payne's attorney, in Benton, Illinois on March 18. Meeker was accompanied by his attorney, Mr. Owens. Meeker testified that the four of them were sitting at a table visiting for a while when Mr. Jenkins asked to see the contract on the farm. Meeker handed it to Jenkins, he read it, took his glasses off, thought a little bit and laid the contract over in front of Payne where it was impossible for Meeker to reach it. Payne thereupon picked up the contract tore it in several pieces, folded it and tore it again and handed it to Mr. Jenkins who dropped it into a wastebasket beside him. Meeker asked Jenkins if he wasn't going to do something and Jenkins reportedly said something to the effect that "this is over with and now we could get down to making a contract." Meeker left the meeting because he was about to lose his temper and went to Owens' office. Owens stayed on for approximately two hours trying to get the matter worked out but was unsuccessful.

Payne testified that he returned to Jenkins' office on Saturday, March 20 with a signed deed to the surface of the farm and abstracts extended to a current date and waited for over two hours but neither Meeker nor his attorney appeared. Approximately one week later another meeting was held with the same four parties present and this time, Meeker, according to his testimony, had certified checks for $64,900 to pay for the farm plus a certified check for $2,000 to pay for the equipment. At the trial Meeker introduced into evidence certified checks totaling $66,900. Again the parties were unable to reach an agreement, ostensibly because Payne demanded possession of the premises for 30 days, to which Meeker would not agree. Also at this meeting there was some discussion regarding a mortgage of the farm to the Federal Land Bank and whether or not Meeker was to pay the full purchase price of $65,000 in cash or was to pay the difference between the mortgage balance and the purchase price and assume the amount due on the mortgage. It was represented by Payne at that meeting that the mortgage had been paid and that Meeker would have to pay the entire purchase price in cash but no release of the mortgage was exhibited. After several unsuccessful attempts to establish a meeting between the parties for the purpose of closing the transaction a final meeting was held in Mr. Jenkins' office on April 29, 1971. Payne was present with his attorney, Jenkins. Meeker was not at the meeting but was readily available in a nearby restaurant. He was represented at the meeting by Mr. Owens and a new attorney

in his behalf, Mr. Wham. The deed was again presented and discussion held regarding language in the deed which provided that the surface only was being conveyed. It was Meeker's contention that he understood that Payne did not own all the oil, gas and other mineral rights but that Meeker was to get all the rights that Payne did own. Payne was told that Meeker had certified checks for $64,900 and $2,000 to pay for the land and the equipment and Payne agreed that he had heard this in the conversation. There was also discussion pertaining to the mortgage of the Federal Land Bank and the release of that mortgage. Meeker's attorneys requested three days in which to examine the abstracts of title to determine whether Payne had a merchantable title to the farm. This request was refused and Payne and his attorney insisted upon payment of $65,000 plus $2,000 in certified checks before delivery of the abstracts or deed. After a conference of some two hours the parties were unable to reach agreement and the meeting disbanded without further contacts between the parties or their attorneys.

Shortly following the meeting Meeker prepared and filed of record an affidavit which set forth the alleged written agreement to sell the 288 acres (set forth above), recited the destruction of the original agreement with intent to avoid the same and that Meeker intended to file suit to enforce the contract for sale.

Sometime in August thereafter Payne entered into a contract to sell the real estate to another party who upon recording the contract discovered the affidavit filed by Meeker. Payne thereupon commenced this suit to have the affidavit and alleged contract expunged from the record and his title quieted. Meeker answered the complaint with denials and filed his counter-claim for specific performance of the written contract.

Shortly before the trial of this case commenced attorney Owens sought and was granted leave to withdraw as attorney for Meeker and later testified at the trial. His testimony corroborated in detail Meeker's story regarding the destruction of the contract by Payne at the meeting in Jenkins' office on March 18. He further testified that prior to that meeting he had met with Meeker in his own office and had examined the contract for sale of the 288 acre farm, stated that it was in substantially the same form as above set forth and that it was signed by both Payne and Meeker.

Payne denied the execution of any written agreement to sell the real estate but readily admitted their meeting at the farm on March 14, 1971 and the agreement with Meeker regarding sale of the farm. It was the testimony of Payne given in the trial of the previous case that established the agreement of record in that case. That testimony regarding the stipulation for dismissal and the settlement agreement in the previous case was made a part of the evidence in the case under consideration.

After a trial before the court sitting without a jury a decree was rendered in favor of plaintiff which granted the prayer of his complaint and dismissed the counter-claim of the defendant. The decree found the affidavit and alleged contract to constitute a cloud on the title of plaintiff and same was expunged from record and defendant held to have no claim to right, title, or interest in the concerned land.

It is the position of Meeker in this appeal, with which we must agree, that the decree of the trial court in this case was clearly against the manifest weight of the evidence and the court erred in entering a decree favorable to plaintiff.

Plaintiff on appeal frankly admits that there was an agreement for sale of the real estate and that this agreement was the subject of a stipulation made in open court which was designed to and did obtain dismissal of the prior case and a satisfaction of a judgment and claim against Payne in the amount of approximately $15,000. But plaintiff insists that he complied with the terms of the agreement when he was present on March 20 with an executed deed to the premises and the abstracts but appellant never then nor at any other time tendered a certified check for $65,000 for the farm plus a certified check for $2,000 for the equipment. Although not urged it is apparently the position of the appellee that by failing to produce the certified check for the deed that defendant has abandoned or forfeited his rights to the agreement.

■■ We are and must remain reluctant to reverse a trial court because a finding and decree are against the manifest weight of the evidence. However, we believe the evidence here, together with fundamental equities operating in favor of the appellant, not only justifies such action on our part, it requires it. *Friedman Electric Co. v. St. Clair County Housing Authority of East St. Louis,* 23 Ill.App.2d 16, 161 N.E.2d 473.

Upon a fair consideration of evidence presented at the trial of this case together with the presumptions that flow therefrom we conclude that the agreement for the sale of the 288 acre farm was reduced to writing and signed by the parties at their meeting on March 14. Meeker testified in detail to the incident in which Payne destroyed the written agreement at the meeting in his attorney's office. The destruction was denied by Payne. Attorney Owens corroborated in graphic detail the testimony of Meeker regarding the destruction of the farm sale agreement, he verified that it was substantially in the form as we have above set forth and that it contained the signatures of both Payne and Meeker. Attorney Jenkins never took the stand to corroborate the testimony of Payne nor to deny, clarify or explain any of the details described by Meeker and Owens; and we specifically note that he did not refute the part ascribed to him in the destruction action nor the statements ascribed to him by both Meeker and Owens. Furthermore, Payne never denied

receiving the $100 which Meeker testified he paid at the meeting on March 14 "to make the contract." And we think it strange that there would be a writing as to the $2,000 to be paid for equipment but no writing as to the $65,000 to be paid for the farm, both of which agreements were originated at the same meeting. Also, the written agreement for the purchase of the equipment reads, in part, as follows: "I Don Meeker owe Tommy Payne *additional* $2,000 for personal items * * *." (Emphasis supplied.)

The adamant refusal of Payne and his attorney to permit Meeker and his attorneys even three days time to examine the abstracts of title to the farm to satisfy themselves that there was a merchantable title prior to the payment of $65,000 was, under the circumstances here unreasonable and unwarranted. Coupled with this was their insistence on payment of the full amount of the agreed purchase price when there was an unreleased mortgage of record with a balance of over $40,000 outstanding and Payne did not have a release of the mortgage and would not agree to transfer title subject to the mortgage.

The conduct displayed by Payne and his attorney throughout the negotiations described can at best be characterized as inadequate for one who would seek relief from a court of equity. Neither the written contract nor the stipulation for settlement of the prior case contained any details regarding the mode and procedure of closing. The agreement was the work of laymen and its lack of detail is understandable. In an equitable proceeding it must be presumed that a reasonable time and manner for implementation of the agreement was intended by the parties. Although it would hardly be necessary, there was testimony of a local attorney experienced in real estate transactions that it was customary for a seller to afford a buyer a reasonable time to examine abstracts of title to be assured of the merchantability of title before paying the purchase price. Indeed, only the foolhardy would proceed otherwise.

■■■ In his brief Payne argues that even if there had been a written agreement for the sale of the farm executed on March 14 the agreement would have been superseded by the March 15 stipulation under oath in open court. Without deciding its accuracy the point may be conceded without improving appellee's case. "A stipulation concerning a pending case in court is an obligation unlike ordinary contracts between parties not in court. * * * All stipulations entered into by parties or their attorneys in respect to the conduct or control of their rights in the trial of a cause will be enforced by the courts in a summary manner unless such stipulations are unreasonable or contrary to public morals. * * * It is the policy of courts to enforce stipulations fairly made between attorneys or parties, relating to the conduct of suits, unless good cause is

shown to the contrary. * * * The law is well settled that a stipulation touching a party's substantial rights may be enforced by an action at law or by a suit for injunction or other appropriate remedy in equity. [Citations.] Whether the aid of the court is invoked by some summary method during the pendency of the cause or by a resort of another independent action, courts look with favor upon stipulations designed to simplify, shorten or settle litigation and save costs to parties, and will, when called upon in any appropriate manner, compel parties to observe such stipulations unless they are illegal or contrary to public policy." *People ex rel. Stead v. Spring Lake Drainage and Levee Dist.*, 253 Ill. 479, 97 N.E. 1042. Also see *In re Estate of Moss*, 109 Ill.App.2d 185, 248 N.E.2d 513.

The agreement for sale and purchase of the farm originated as a stipulation for dismissal of the previous case which was then done by the court with prejudice to both parties. When the court by its decree in this case dismissed appellant's counter-claim he was deprived not only of his judgment in the prior case but of the benefit of the stipulation entered into in that case. The result is unconscionable. The court below should have rendered a decree for specific performance of the sale agreement in favor of defendant upon his counter-claim. This case is reversed and remanded with instructions to the trial court to render a decree accordingly. We find appellant's proof regarding the agreement to convey the oil, gas and other mineral rights to be insufficient and accordingly the decree should provide for conveyance of the surface only of the farm as provided by the deed originally prepared by plaintiff. Also, we find defendant's proof of damages by reason of plaintiff's failure to comply with the agreement is indefinite and uncertain and the corrected decree should find the issues on defendant's claim for damages in favor of the plaintiff.

Reversed and remanded with directions.

### SUPPLEMENTAL OPINION
### UPON DENIAL OF PETITION FOR REHEARING

Plaintiff's Petition for Rehearing has brought to our attention the fact that this action was commenced when Meeker took a confession of judgment against Payne under a rental payment clause of a lease agreement. The original opinion stated, erroneously, that the action was commenced by Meeker when he took a judgment by confession upon a note given by Payne. The original opinion is therefore corrected to reflect the manner in which the action was instituted. In all other respects the original opinion is confirmed and plaintiff's Petition for Rehearing denied.