DON MEEKER, Plaintiff-Appellee and Appellant and Cross-Appellant, v. THOMAS GRAY, Defendant-Appellant and Cross-Appellee (Tommy Payne *et al.*, Defendants-Appellees; The Federal Land Bank of St. Louis *et al.*, Defendants).

Fifth District   No. 5—84—0697

Opinion filed April 10, 1986.—Rehearing denied May 14, 1986.

Harlan Heller and Brent D. Holmes, both of Harlan Heller, Ltd., of Mattoon, for Don Meeker.

Paul M. Caldwell, of Caldwell, Troutt, Alexander, Quindry & Popit, of Benton, for appellant Thomas Gray.

Charles W. Phillips, of Harrisburg, for appellee Ray Everett Odom.

Ronald J. Giacone, of Benton, for appellee Vera Faye Odom.

JUSTICE WELCH delivered the opinion of the court:
Plaintiff Don Meeker commenced this action against defendant Tommy Payne based on Payne's conveyance of certain real property other than as allegedly agreed between those parties. Other defend-

ants included Thomas Gray, Mr. Payne's grantee, and Ray Everett Odom and Vera Faye Odom, now Vera Faye DeMattei, grantees as to subsequent conveyances by Mr. Gray. Also named as defendants were the Federal Land Bank of St. Louis and the Farmers Home Administration of the United States Department of Agriculture. Mrs. DeMattei defaulted. After a bench trial, the circuit court of Franklin County ordered Mr. Odom to convey the real estate to Mr. Meeker and awarded damages in favor of Mr. Meeker and against Mr. Gray, Mr. Odom, and Mrs. DeMattei. On motion of Mrs. DeMattei, the court vacated the judgment against her. Mr. Gray appeals; Mr. Meeker cross-appeals. We vacate the judgment and remand.

This is the third appeal to this court arising out of the underlying transaction, Mr. Payne's lease of three 15,000-bushel grain bins owned by Mr. Meeker. Much of the fact background is undisputed. Mr. Payne became delinquent in his rental payments to Mr. Meeker, who obtained a judgment by confession on a rent payment clause in the rental contract. On Mr. Payne's motion the judgment was opened and Mr. Payne counterclaimed *inter alia* for improper installation of the grain bins. During trial Mr. Meeker and Mr. Payne agreed to settle the case, and each signed a written agreement providing that Mr. Payne would convey his 288-acre farm to Mr. Meeker for $65,000. The case was dismissed. Some days later, according to Mr. Meeker, he and his attorney met with Mr. Payne and Mr. Payne's attorney, Elmer Jenkins, in the latter's office; Mr. Jenkins asked to see the contract on the farm; Mr. Meeker handed it to Mr. Jenkins, who after reading it laid it in front of Mr. Payne; Mr. Payne tore the document into pieces and handed it to Mr. Jenkins, who dropped it in a wastebasket and said something like "this is over with and now we could get down to making a contract." Further negotiations produced no agreement between the parties. Mr. Meeker then prepared and filed of record an affidavit which set forth the written agreement and its destruction and stated Mr. Meeker's intention to file an action to enforce the agreement. In August of 1971, Mr. Payne contracted to sell the real estate to another party, who discovered the affidavit. On August 6, 1971, Mr. Payne commenced an action to have the affidavit and contract expunged from the record and his title quieted. Mr. Meeker counterclaimed for specific performance of the contract. After a bench trial, the circuit court of Franklin County found for Mr. Payne and dismissed Mr. Meeker's counterclaim. Mr. Meeker appealed. By opinion filed March 29, 1973, this court reversed and ordered that the circuit court render a decree for specific performance of the sale con-

tract regarding the surface of the realty in favor of Mr. Meeker. *Payne v. Meeker* (1973), 10 Ill. App. 3d 986, 295 N.E.2d 239.

While the above action was pending in the circuit court of Franklin County, Mr. Payne contracted to sell the real estate to Mr. Gray. On November 24, 1971, after the circuit court's judgment quieting Mr. Payne's title, Mr. Payne conveyed the surface of the real estate to Mr. Gray, who the same day conveyed 188 acres of the surface of the real estate to Mr. and Mrs. Odom, who in turn executed and recorded two mortgages, one in favor of the Federal Land Bank of St. Louis, the other in favor of the Farmers Home Administration. In 1974 Mr. Gray conveyed the other 100 acres to Mr. Odom. The marriage of Mr. and Mrs. Odom ended in divorce in 1974, and Mrs. Odom conveyed her interest in the 188 acres to Mr. Odom. Mrs. Odom later changed her name to DeMattei.

Mr. Meeker instituted the instant action on January 22, 1979, seeking equitable relief from Mr. Payne, Mr. Gray, Mr. Odom, Mrs. DeMattei and the two mortgagees. The circuit court of Franklin county dismissed Mr. Meeker's complaint with prejudice. This court reversed and remanded with directions to allow Mr. Meeker to amend his complaint and for further proceedings. (*Meeker v. Payne* (1981), 101 Ill. App. 3d 723, 428 N.E.2d 614.) After a bench trial, the judgment of the trial court filed May 31, 1984, was as follows: Mr. Odom was ordered to convey the 288 acres to Mr. Meeker by warranty deed within 10 days; the mortgage in favor of the Federal Land Bank was declared null and void; judgment was entered in favor of Mr. Meeker and against Mr. Payne in the amount of $114,600; judgment was entered in favor of Mr. Meeker and against Mr. Gray in the sum of $19,600; judgment was entered in favor of Mr. Meeker and against Mr. Odom in the amount of $95,000; Mr. Gray and Mr. Payne were held jointly and severally liable for the judgment against Mr. Gray; Mr. Payne and Mr. Odom were held jointly and severally liable for the judgment against Mr. Odom; Mr. Odom and Mr. Payne each received credit for $64,900 against the judgments against them; judgment was entered in favor of Mr. Meeker and against Mrs. DeMattei in the sum of $95,000; and Mr. Meeker was granted immediate possession of the 288 acres.

A letter filed July 2, 1984, signed by the trial court and sent to Mr. Odom's attorney (Mr. Phillips) and Mr. Meeker's attorney, states:

> "I am in receipt of Charlie Phillips' letter dated June 13, 1984. In response thereto, I am enclosing a copy of my computations used to reach the judgments entered. Let me con-

firm that in the event that Odum [*sic*] pays the sum of $30,100.00 due Meeker, then the judgment for Meeker and against Odum will be completely satisfied."

The attached sheet states:

"Odum

| | |
|---|---|
| 119,450 | Fair rental value of real estate, plus interest |
| −32,450 | Interest on purchase price of $64,900.00 |
| 87,000 | |
| + 8,000 | Fair rental value of grain bin |
| 95,000 | |

Gray

| | |
|---|---|
| 19,600 | Conversion of grain bins |

Payne

| | |
|---|---|
| 87,000) | |
| 8,000) | Judgment against Odom |
| 19,600 | Judgment against Gray |
| 114,600." | |

By motion filed June 29, 1984, Mrs. DeMattei, whose liability against Mr. Meeker was established by default, sought to vacate the default judgment against her and file her answer to Mr. Meeker's complaint. By order filed September 11, 1984, the trial court entered judgment for Mrs. DeMattei and against Mr. Meeker on Mr. Meeker's complaint.

We first consider Mr. Gray's appeal. Mr. Gray first contends that he is entitled to a new trial because he was deprived of the services of attorney Jenkins at trial and forced to proceed *pro se.*

Attorney Jenkins entered his appearance on behalf of Mr. Gray on February 16, 1979.

Following remand by this court in 1981, the circuit court on June 18, 1982, ordered the filing of Mr. Meeker's amended complaint, which according to the order "has previously been served upon all Defendants." Mr. Meeker's amended complaint sought, *inter alia,* "judgment against the Defendants in the sum of TWO HUNDRED THOUSAND DOLLARS ($200,000.00) in actual damages and TWO HUNDRED THOUSAND DOLLARS ($200,000.00) in punitive damages ***." On July 7, 1982, Mr. Payne and Mr. Gray filed their joint handwritten answer:

"Tommy Payne and Thomas Gray, for answer to the complaint of Don Meeker, each says for himself that Don Meeker has harassed them for more than 10 years and he has already

had his day in court and they do not intend to hire lawyers, so they answer for themselves and deny each and every claim of Don Meeker and specifically deny paragraphs 1 to 44 in the complaint."

Two days later Mr. Odom's attorney commenced serving Mr. Gray personally. Mr. Meeker's attorney continued serving Mr. Jenkins as attorney for Mr. Gray up to and including notice of Mr. Odom's discovery deposition, which notice was filed August 3, 1983. Notice of the discovery deposition of Mr. Jenkins was filed December 2, 1983, by Mr. Meeker's attorney, and there is no indication of record that Mr. Gray was served with a copy of that notice. A copy of notice filed December 23, 1983, by Mr. Meeker's attorney regarding a January 6, 1984, motion hearing states that it was served on Mr. Gray. Notice of the April 23, 1984, bench trial, filed January 4, 1984, indicates service on Mr. Gray. The report of proceedings on the first day of the bench trial indicates the court questioned Mr. Gray and Mr. Payne as follows:

"THE COURT: *** Now, Mr. Gray, you are not represented by an attorney, are you?

DEFENDANT GRAY: No, sir, your Honor.

THE COURT: All right. Mr. Payne, you are not represented by an attorney.

DEFENDANT PAYNE: No, sir.

THE COURT: All right. Now, from time to time during the proceedings, I will be asking you whether or not you would like to ask any questions but, if I overlook you and you would like to ask some questions, you raise your hand and the Court will recognize you.

DEFENDANT PAYNE: Thank you. They subpoenaed our lawyer, Elmer Jenkins, as a witness, so—he has been our lawyer all along—so, we didn't have time to get a lawyer in his place.

THE COURT: You are prepared to proceed, today?

DEFENDANT PAYNE: Right on.

THE COURT: Without being represented by an attorney?

DEFENDANT PAYNE: Yes, your Honor."

Mr. Jenkins did testify at trial. Mr. Gray did not, stating at trial that his deposition would stand as his story. Mr. Gray absented himself from much of the bench trial. No transcript of Mr. Gray's deposition appears in the record on appeal. However, Mr. Meeker's counsel represented at the post-trial motions hearing that at that November 15, 1983, deposition, "Mr. Gray was asked under oath

whether he had anyone representing him in the lawsuit, and he said, no, he didn't, and that he was representing himself."

■■■■ Once a party chooses to represent himself, he is responsible for his own defense and may not expect favored treatment from the court. (*In re Marriage of Pahlke* (1983), 120 Ill. app. 3d 1009, 1013, 458 N.E.2d 1141, 1145.) An attorney has no right to appear as attorney for another without the latter's authority. (*Zych v. Jones* (1980), 84 Ill. App. 3d 647, 651, 406 N.E.2d 70, 74.) Once an attorney is discharged, the court cannot continue to recognize him against the wishes of his former client. (*Tobias v. King* (1980), 84 Ill. App. 3d 998, 1000, 406 N.E.2d 101, 103.) In the instant case there is no affirmative evidence that Mr. Gray hired Mr. Jenkins as his attorney, other than Mr. Jenkins' entry of appearance on Mr. Gray's behalf five years prior to trial. There is no indication of record that Mr. Gray paid Mr. Jenkins or agreed to pay him to represent his interests. At various times throughout the proceedings, most notably in Mr. Gray's and Mr. Payne's handwritten answer to Mr. Meeker's complaint, Mr. Gray represented that he desired to represent himself. That decision may have been unwise, but it is not cause to disturb the judgment. The instant record is lengthy and complex, and it is not surprising that Mr. Jenkins omitted to formally withdraw as Mr. Gray's attorney of record or that the trial court failed to notice that omission. However, we find no affirmative indication that Mr. Gray was misled by that omission, and hence no cause to disturb the judgment on that basis. See *Tobias v. King* (1980), 84 Ill. App. 3d 998, 406 N.E.2d 101.

■■ Mr. Gray argues that the circuit court erred in finding that Mr. Gray converted two of Mr. Meeker's grain bins. Mr. Gray argues that "at no point during the testimony during the liability phase of the trial did the plaintiff establish ownership of the bins * * *." This argument is unduly technical. There was ample evidence from which to infer Mr. Meeker's ownership of the bins, if not during the so-called liability phase of the trial. In any event, we find it well established that the bins belonged to Mr. Meeker when he rented them to Mr. Payne, and there is no evidence regarding any subsequent change in title to the bins.

Mr. Gray argues that to prove conversion Mr. Meeker had to testify that he did not consent to removal of the bins from the Payne farm. We disagree. Circumstantial evidence of lack of consent was sufficient on this point (see *Ladd v. Ruck* (1969), 108 Ill. App. 2d 379, 383, 248 N.E.2d 147, 149), particularly as there was no evidence to the contrary.

Mr. Gray also suggests that Mr. Meeker failed to prove conversion of the bins because he failed to prove his right to immediate possession of the bins. We find it sufficient that Mr. Meeker was the sole owner of the bins at all times and that no other party was shown to have any right to deprive him of possession. This was a sufficient basis upon which to infer Mr. Meeker's immediate right to possession. See *Consolidated Construction Co. v. Great Lakes Plumbing & Heating Co.* (1967), 90 Ill. App. 2d 196, 207, 234 N.E.2d 378, 384.

■ Mr. Gray argues that the trial court erred by calculating damages for conversion based on the value of the bins at the time of trial rather than at the time of conversion. Mr. Meeker testified: "We take many of these down, each year, and set them back up, and we set them up for 60 cents a bushel." On that basis Mr. Meeker calculated that the fair price for a used 15,000-bushel bin was $9,000. Mr. Gray argues that this testimony set the price only for the latest year. However, Mr. Meeker's testimony could also be interpreted as setting the usual charge at 60 cents per bushel for "each" year. Neither Mr. Gray nor any other party attempted to limit this testimony by cross-examination, and no other evidence was adduced regarding the value of the used grain bins. Mr. Meeker's testimony being the only evidence of the value of the bins, the circuit court was entitled to accept it. In any event, it does not appear that the $19,600 total assessed by the trial court as damages without itemization for the conversion of the two bins could have been determined based on the $9,000 value which Mr. Gray argues is incorrect. It appears from uncontradicted testimony at trial that the conversion occurred in 1974. If the court calculated interest at 5% per year for 10 years (1974 through 1983), it appears that one-third of the judgment against Mr. Gray for conversion should consist of interest. Accordingly, we agree with Mr. Meeker that the judgment for conversion was not shown to be excessive.

■ We turn to Mr. Meeker's cross-appeal. First, Mr. Meeker argues that the court's measure of damages was inadequate. We cannot decide this issue on the present record. The trial court concluded that the fair rental value of the real estate, plus interest, for the period 1974 through 1983, totalled $119,450. According to oral comments by the trial court, this figure was derived from the testimony of two cash-rent farmers, Virgil Kash and Carl Overturf, with some modifications, and fell between the "low" values testified to by Mr. Kash and Mr. Overturf and the "high" values testified to by Mr. Meeker. We are unable to duplicate the trial court's calculations or

approximate his results. Our own calculations indicate that the amount awarded to Mr. Meeker for the fair rental value of the 288 acres may be too low. However, our calculations are based on assumptions which the trial court may or may not have made. Accordingly, pursuant to our authority to "make any other and further orders and grant any relief, including a remandment ***, that the case may require" (87 Ill. 2d R. 366(a)(5)), we vacate the award and remand the cause so that the trial court may clarify, and if necessary revise the judgment. (See *Long v. Arthur Rubloff & Co.* (1975), 27 Ill. App. 3d 1013, 1022 n.4, 327 N.E.2d 346, 352 n.4.) However, with one exception, which we discuss later, no further evidence is to be taken upon remand: Each of the parties has had his day in court; it is not asserted that evidence was wrongly refused or that the trial was otherwise unfair (except as to Mr. Gray whose contentions we have discussed above).

■ Mr. Meeker also argues that the trial court erred in failing to award damages for 1971 through 1973. Mr. Meeker contends that he was entitled to possession of the 288 acres as of March 15, 1971, per the 1971 settlement contract between Mr. Meeker and Mr. Payne. Mr. Odom relies upon the principle of merger, *i.e.,* the contract or instrument upon which a proceeding is based merges in the judgment and is thereafter without legal effect. (*Doerr v. Schmitt* (1941), 375 Ill. 470, 472, 31 N.E.2d 971, 972.) This does not mean that the court may not look behind the judgment to see upon what it is founded, to give the judgment its just effect. (*Doerr v. Schmitt* (1941), 375 Ill. 470, 31 N.E.2d 971.) Here, Mr. Meeker proved his entitlement to possession of the 288 acres as of March 15, 1971. As this court noted he is entitled to possession of the real estate. He has been so entitled since March 15, 1971. Any judgment which does not compensate him for the loss of that right confers unjust protection on those who wrongly deprived him of his rights. We hold that Mr. Meeker demonstrated his entitlement to damages commencing in 1971. The judgment of the trial court on remand should so reflect.

Mr. Meeker argues that defendants should not have been allowed credit for interest on the purchase price balance of $64,900. Mr. Meeker testified at trial that he held the purchase price in the form of two cashier's checks, which he retained from March of 1971 until he cashed one at the insistence of the drawee bank on April 15, 1980.

■ Under an executory sales contract the vendor is entitled to interest at the legal rate on the unpaid purchase balance from the

vendee in possession even though the vendor has failed to deliver the deed as required, unless the vendee has placed the purchase money beyond his own use, or meanwhile incurred liability for payment of interest to a prospective mortgagee. This rule is derived from the proposition that the vendee should not enjoy beneficial use of the premises and the purchase money without compensating the vendor for either. (*Hanson v. Duffy* (1982), 106 Ill. App. 3d 727, 732, 435 N.E.2d 1373, 1378.) To avoid paying interest after tender, the debtor must keep the money ready at all times to pay the creditor if he should conclude to receive it. The purchaser must, in general, give notice that the money is lying dead, and must actually appropriate it for the payment of the particular debt. (*Atchison, Topeka & Santa Fe R.R. Co. v. Chicago & Western Indiana R.R. Co.* (1896), 162 Ill. 632, 656, 44 N.E.2d 823, 830.) In the instant case, Mr. Meeker's testimony at most established that the balance of the purchase money was lying dead in his hands through 1980, not through trial. Also, we find no evidence requiring the conclusion that any of the defendants was aware that Mr. Meeker was not earning interest on the balance of the purchase price. We conclude that the circuit court did not err in awarding credit for interest on the balance of the purchase price.

■ Mr. Meeker also contends that the trial court should have awarded damages in his favor for waste committed by Mr. Odom on the 288 acres. Mr. Meeker testified at length regarding his view and photographing of the premises during an overnight recess of the trial, and his photographs were admitted into evidence. The court could have concluded from Mr. Meeker's testimony that the buildings were in disrepair and that the farm was irreparably damaged by erosion. However, the court could also have believed Mr. Odom's testimony that any erosion was seasonal and minor. Further, there was evidence that through Mr. Odom's efforts many acres were added to the tillable total on the farm. The trial court did not err in refusing damages for waste.

■ Mr. Meeker argues that Mr. Gray, Mr. Payne and Mr. Odom should have been adjudged jointly and severally liable for all sums due Mr. Meeker as a result of defendants' refusal to convey the farm to him. Mr. Meeker compares the instant situation to that of a joint contractual obligation. If two or more parties to a contract owe a joint and several duty of performance to another party to the contract and the duty is not performed, each may be liable for the entire damages resulting from the failure to perform. (*Brokerage Resources, Inc. v. Jordan* (1980), 80 Ill. App. 3d 605, 608, 400 N.E.2d

78, 80.) However, since only Mr. Payne and Mr. Meeker were parties to the instant contract, the rule stated in *Brokerage Resources* does not apply.

Mr. Meeker argues that the trial court erred in vacating the default judgment against Mrs. DeMattei and entering judgment in her favor with respect to the allegations in Mr. Meeker's complaint. We first consider whether the default was improperly vacated. The default was set aside prior to final judgment and therefore presumably pursuant to section 2—1301(e) of the Civil Practice Law. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1301(e).) Mr. Meeker argues that Mrs. DeMattei did not act with requisite diligence in defending the action against her. However, the significance of this requirement under section 2—1301(e) is less than it once was. (See *Dalton v. Blanford* (1978), 67 Ill. App. 3d 91, 97-98, 383 N.E.2d 806, 811.) The main concern is whether substantial justice is being done between the parties and whether it is reasonable to compel Mr. Meeker to try the case. *Dalton v. Blanford* (1978), 67 Ill. App. 3d 91, 383 N.E.2d 806.

Thus the important question is whether Mrs. DeMattei showed any defense to the cause of action asserted by Mr. Meeker. The answer is yes. Mrs. DeMattei alleges she was never an owner of the 100 acres conveyed by Mr. Gray to Mr. Odom in 1974. If so, she could not have been responsible for depriving Mr. Meeker of possession of the 100 acres as alleged in his amended complaint, and the judgment against her was properly vacated in light of her denial of ownership.

Next, we consider whether the trial court properly entered judgment against Mr. Meeker and in favor of Mrs. DeMattei. While there was proof regarding Mr. Odom's knowledge of the circumstances concerning Mr. Gray's title to the farm at the times of the conveyances to Mr. Odom, we find no such evidence of record with respect to Mrs. DeMattei. Mr. Meeker alleged in paragraph 28 of count I of his amended complaint that at the time of the 1971 conveyance by Mr. Gray to Mr. and Mrs. Odom, both of the grantees had actual and constructive notice of the 1971 settlement contract between Mr. Meeker and Mr. Payne, as well as the lawsuit between those parties and the rights asserted by Mr. Payne. A copy of the 1971 deed from Mr. Gray and Mr. and Mrs. Odom was appended to Mr. Meeker's amended complaint. Mrs. DeMattei filed her motion to vacate the default judgment together with her proposed answer to Mr. Meeker's amended complaint. In said answer she denied the allegations of paragraph 28 of count I.

The trial court having heard no evidence regarding

Mrs. DeMattei's liability to Mr. Meeker (due to her default), the trial court's judgment in her favor was in effect a judgment on the pleadings. A motion for judgment on the pleadings questions whether the pleadings present a triable issue of fact and if issues of fact are found, evidence must be taken and judgment on the pleadings may not be entered. The motion does not test whether there is any evidence to support the pleadings. (*Heritage Standard Bank & Trust Co. v. Trustees of Schools* (1980), 84 Ill. App. 3d 653, 659, 405 N.E.2d 1196, 1201.) Mr. Meeker's amended complaint presented at least a question of fact regarding Mrs. DeMattei's knowledge of Mr. Meeker's rights at the time of the 1971 conveyance to Mr. and Mrs. Odom, and Mrs. DeMattei's denial in her answer was not sufficient to dispose of this question. Accordingly, we must reverse that portion of the judgment which is in Mrs. DeMattei's favor and remand for trial upon the issues raised in Mr. Meeker's amended complaint.

■■■ Mr. Odom contends that the judgment against him based on rental value of the grain bins was erroneous and should be vacated. Mr. Odom has not filed a cross-appeal. Normally, when an appellee does not file a cross-appeal, the reviewing court will be confined to issues raised by the appellant and will not consider issues raised by the appellee, except to the extent that they are related to the appellant's issues. (*Simmons v. Union Electric Co.* (1984), 121 Ill. App. 3d 743, 760-61, 450 N.E.2d 28, 40, *aff'd* (1984), 104 Ill. 2d 444, 473 N.E.2d 946.) In light of our disposition of the other issues raised in this appeal, Mr. Odom's contention requires no further comment.

The following is a summary of our disposition of this appeal: The judgment of the circuit court of Franklin County is vacated and the cause is remanded. The circuit court shall permit further proceedings on the issue of Mrs. DeMattei's liability (if any) to Mr. Meeker, including trial if need be. The court shall revise the awards of damages in favor of Mr. Meeker to include damages for the period from 1971 through 1973. The court shall provide a basis for its computation of damages sufficient to permit the parties and this court to ascertain whether the judgment is reasonable. In all other respects the court shall proceed consistent with the views expressed herein.

Vacated and remanded.

JONES and HARRISON, JJ., concur.