NOTICE

Decision filed 10/26/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190415-U

NO. 5-19-0415

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

## APPELLATE COURT OF ILLINOIS

## FIFTH DISTRICT

_____

| | | |
|---|---|---|
| DIAMOND BARNES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 19-L-605 |
| | ) | |
| THOMAS GIBBONS, Madison County State's | ) | |
| Attorney, | ) | Honorable |
| | ) | David W. Dugan, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Moore and Wharton concurred in the judgment.

## ORDER

¶ 1     *Held*:  The trial court properly granted the defendant's motion to dismiss where the plaintiff could not establish a contractual relationship with the defendant, the claim was barred by the collateral attack doctrine, and the defendant had absolute immunity from claims brought by the plaintiff. The trial court properly dismissed the plaintiff's motion for default judgment and did not abuse its discretion when it denied the plaintiff's request to appear in person.

¶ 2     The plaintiff, Diamond Barnes, appeals from an order of the circuit court dismissing his breach of contract complaint against the defendant, Thomas Gibbons (Gibbons), in his capacity as State's Attorney of Madison County, Illinois. For the reasons that follow, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4    On April 23, 2019, the plaintiff filed a 30-count complaint alleging a breach of contract action against Gibbons, in his capacity as the Madison County State's Attorney. The contract action arose following the plaintiff's conviction for first degree murder in 2009 in the circuit court of Madison County. In that case, the plaintiff was in attendance at a family gathering in Alton, Illinois, when he shot and killed the husband of his grandmother's caretaker with a 9-millimeter handgun. The plaintiff owned the handgun, and he had a permit to carry the weapon, which had been issued by the State of Virginia. The trial judge, sitting as the factfinder in the murder case, rejected plaintiff's claim of self-defense. The plaintiff was convicted of first degree murder and sentenced to 45 years in prison. His conviction was later affirmed on appeal. *People v. Barnes*, 2012 IL App (5th) 110246-U.

¶ 5    In his complaint, the plaintiff repeatedly asserted that Gibbons, in his investigative capacity as a prosecutor in the murder case, breached the existence of a valid and enforceable written contract. The alleged written contract was the permit issued by the State of Virginia that allowed the plaintiff to carry and lawfully conceal his 9-millimeter handgun, the handgun that plaintiff used to commit first degree murder. Attached to the complaint was a letter from the Virginia Beach Circuit Clerk's Office certifying that on August 29, 2007, the plaintiff was issued a five-year permit to carry a concealed handgun, with an expiration date of August 29, 2012. The plaintiff further alleged in his complaint that he incurred a loss of liberty and claimed damages for loss of income. Each count of the complaint alleged, essentially, the same claim, but relied upon differing dates that the

Madison County State's Attorney's office had worked on the plaintiff's murder case. In each of the 30 counts, the plaintiff sought $820,000 in damages due to "loss of income," for a total of $24.6 million.

¶ 6    On June 13, 2019, Gibbons entered his appearance and filed a motion for extension of time to file a responsive pleading. Gibbons asserted that additional time was necessary due to the 45-page complaint being "largely unintelligible," and additional time was necessary to decipher the allegations and claims. On June 17, 2019, the court granted the motion, and Gibbons was given until July 15, 2019, to file a response to the plaintiff's complaint.

¶ 7    On June 18, 2019, the circuit clerk's office filed the plaintiff's motion for default judgment against Gibbons.[1] The plaintiff claimed that more than 30 days had expired from the time Gibbons was served and Gibbons had failed to appear, answer, or otherwise defend against the plaintiff's pleading. The plaintiff filed a second motion for default judgment on July 10, 2019. A return of summons was attached as an exhibit. In the return of summons, there were two dates appearing following the signature of the process server. The first was May 10, 2019. Directly beneath that date was a second date, May 29, 2019, along with a handwritten notation that appeared to be the name of the defendant's secretary. Gibbons filed a response in opposition to the plaintiff's motion for default judgment. Therein, Gibbons argued that the trial court granted an extension of time, and his responsive pleading was filed in accordance with the court order.

---

[1]The plaintiff signed his pleading on June 13, 2019, but it was received in the circuit clerk's office on June 18, 2019.

¶ 8    In the meantime, on July 15, 2019, Gibbons also filed a motion to dismiss the plaintiff's complaint under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2018)), along with a supporting memorandum. In his motion, Gibbons asserted that a breach of contract action could not be maintained because the plaintiff could not establish the existence of a valid and binding contract between the plaintiff and Gibbons; the plaintiff's claims were barred by the collateral attack doctrine; and Gibbon's actions were immune from suit because the defendant was acting within the scope of his prosecutorial duties. Gibbons also alleged, in the alternative, that the complaint should be dismissed under section 2-606 of the Code (735 ILCS 5/2-606 (West 2018)), because the plaintiff failed to attach a written contract to the complaint. Additionally, Gibbons claimed that the plaintiff's complaint was insufficient because it only alleged legal conclusions, and the plaintiff did not allege specific facts to support his claims.

¶ 9    The plaintiff argued in his response to the motion to dismiss that the breach of contract claim was sufficiently pled, and it was not necessary for Gibbons to be a party to the contract to breach the contract. Additionally, he argued that prosecutorial immunity did not apply to the plaintiff's breach of contract claim. The plaintiff claimed that the defendant's actions were "investigative" and "administrative" and that the conceal and carry permit issued in Virginia was not disclosed during the plaintiff's criminal proceeding. The plaintiff further asserted that his complaint should have been construed as a common law breach of contract action and that it was not a civil rights action under 42 U.S.C.A. § 1983; therefore, the collateral attack doctrine should not be applicable. The plaintiff also included a draft of a writ of *habeas corpus ad prosequendum* with his response to the

4

motion to dismiss but did not file an additional pleading to request an appearance at the motion hearing.

¶ 10    On August 12, 2019, after reviewing the motions and responses, the trial court entered an order denying the plaintiff's motion for default judgment. The August 12, 2019, order also gave the parties 21 days to file a proposed order with the trial court in regard to the defendant's motion to dismiss. Additionally, the court denied the writ to transport the plaintiff to the courthouse for a motion hearing.

¶ 11    The plaintiff offered a proposed order in support of his position to deny the defendant's motion to dismiss. The plaintiff also filed an additional pleading, arguing that Gibbons was a third-party beneficiary to a contract formed between the plaintiff and the State of Virginia. Gibbons, on the other hand, did not file a proposed order and relied on his pleadings on file.

¶ 12    On September 3, 2019, the trial court entered a written order, granting Gibbons' motion to dismiss the plaintiff's complaint, with prejudice, pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2018)). The order included the court's findings and analysis. Initially, the trial court found that the plaintiff had failed to allege the existence of a valid and enforceable contract between the plaintiff and Gibbons because Gibbons was not a party to the contract. In its findings, the trial court also considered the argument that the plaintiff's concealed handgun permit created contractual rights. In that regard, the trial court determined that if there was a valid contract, the contract would be between the plaintiff and the State of Virginia. The trial court found that "Gibbons [was] simply not a

party to any agreement between Barnes and the State of Virginia and cannot, therefore, be held liable under the theory of breach of contract."

¶ 13 The trial court next considered the plaintiff's claims that Gibbons had violated the plaintiff's constitutional rights, causing injury to the plaintiff in the form of loss of liberty and lost economic damages. The plaintiff alleged that Gibbons violated the contracts clause of the United States Constitution and Illinois Constitution; the plaintiff also claimed that his second amendment right to bear arms was violated. The trial court construed these claims as asserting civil rights violations under 42 U.S.C. § 1983. For instance, the plaintiff asserted that the investigation into his criminal conduct "lacked probable cause" and he was indicted, arraigned, and unlawfully convicted resulting in his loss of liberty. Additionally, the trial court considered the claims that Gibbons' investigation breached the contract between the plaintiff and the State of Virginia resulting in "injury incurred via 'loss of liberty' " as a civil rights violation. The trial court found that the case of *Heck v. Humphrey*, 512 U.S. 477 (1994), and the collateral attack doctrine was dispositive of the plaintiff's claims. Specifically, since the plaintiff's murder conviction had not been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of *habeas corpus*, the plaintiff had no cause of action under 42 U.S.C. § 1983.

¶ 14 The trial court additionally found that the actions by Gibbons were protected by prosecutorial immunity. Specifically, the alleged actions occurred while his office was protected by absolute immunity.

6

¶ 15 The plaintiff then filed a petition for relief from judgment pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2018)) and a postjudgment motion. The court treated the plaintiff's pleadings as motions to reconsider and, after reviewing the pleadings, denied them. This appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17 The plaintiff, acting *pro se*, raises 13 points on appeal. In considering his claims, he essentially asserted that the trial court erred in its decision to grant the motion to dismiss his complaint, deny his motion for default judgment, and deny his request to appear in person for the motion hearings

¶ 18 Initially, we note that the arguments by Gibbons, in his motion to dismiss and on appeal, focused on the dismissal of the plaintiff's complaint under section 2-619. 735 ILCS 5/2-619 (West 2018). Gibbons also, however, raised issue with the contents of the *pro se* plaintiff's pleading under section 2-615 and argued that the plaintiff must allege facts, not conclusions, sufficient to bring a claim within a legally recognized cause of action. 735 ILCS 5/2-615 (West 2018). The standard of review for a dismissal under section 2-615 or 2-619 is *de novo*. *Neppl v. Murphy*, 316 Ill. App. 3d 581, 583-84 (2000).

¶ 19 The trial court granted the defendant's motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2018)). The purpose of section 2-619 is to provide litigants with a method to dispose of issues of law and easily proven issues of fact early in the case, even before discovery has commenced. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003); 735 ILCS 5/2-619 (West 2018). A motion for involuntary dismissal under section 2-619 admits the legal sufficiency of the plaintiff's claim but asserts that

7

there is an affirmative matter that defeats the claim outside of the complaint. *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008); 735 ILCS 5/2-619(a)(9) (West 2018). "The term 'affirmative matter' *** has been defined as a type of defense that either negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint." *Neppl*, 316 Ill. App. 3d at 585.

¶ 20                                    A. Motion to Dismiss

¶ 21    In each count of the plaintiff's complaint, he alleged that Gibbons, by prosecuting the plaintiff for first degree murder, breached a contract that the plaintiff had entered into with the State of Virginia, which allowed him to carry a concealed weapon. In general, contract law is based on a voluntary agreement between parties and any damages awarded are based on the mutual expectations of the parties. *Collins v. Reynard*, 154 Ill. 2d 48, 51 (1992). Without mutual assent, there is no contract. *Catholic Charities of the Archdiocese of Chicago v. Thorpe*, 318 Ill. App. 3d 304, 307 (2000).

¶ 22    To maintain a breach of contract claim, a plaintiff must allege and prove the existence of a valid and enforceable contract, a plaintiff's performance, a defendant's breach, and a plaintiff's injury. *Henderson-Smith & Associates, Inc. v. Nahamani Family Service Center, Inc.*, 323 Ill. App. 3d 15, 27 (2001). Neither the permit itself nor any written contract was attached to the plaintiff's complaint, as required by section 2-606 of the Code (735 ILCS 5/2-606 (West 2018)). The plaintiff only provided, and relied upon, a letter from the circuit court of Virginia Beach, Virginia, that certified the existence of the plaintiff's handgun permit issued by the State of Virginia.

8

¶ 23　The plaintiff admitted that Gibbons was a nonparty to the contract between the plaintiff and the State of Virginia. A nonparty to a contract cannot be held liable for breach of contract. *Meeker v. Gray*, 142 Ill. App. 3d 717, 727-28 (1986). Nevertheless, the plaintiff argued that it did not matter if Gibbons was a party to the contract because Gibbons "breached the existence" of his permit issued in Virginia. The plaintiff relied on and misinterpreted the case of *Green v. Biddle*, 21 U.S. 1 (1823), to argue that nonparties to a contract may be subject to liability. Contrary to the plaintiff's argument, *Green* considered a contract as "the agreement of two or more parties, to do, or not to do, certain acts." *Green,* 21 U.S. at 92.

¶ 24　The plaintiff additionally made a claim that Gibbons was a third-party beneficiary to the permit issued by the State of Virginia. The parties to a contract must expressly intend for a beneficiary to receive a benefit under the contract for there to be liability to a third party. *Hacker v. Shelter Insurance Co.*, 388 Ill. App. 3d 386, 394 (2009). Here, the plaintiff alluded to Gibbons as having a "stake in the outcome," but did not provide a contract or assert a benefit that Gibbons purportedly received.

¶ 25　And contrary to the assertions by the plaintiff regarding the rights under the Virginia permit, pursuant to section 40 of the Illinois Firearm Concealed Carry Act (Concealed Carry Act) (430 ILCS 66/40 (West 2018)), Illinois law requires nonresidents to apply for an Illinois license to carry a concealed handgun, regardless of if they are licensed out of state. Nonresidents of Illinois that have an out-of-state permit may still be allowed to transport a concealed firearm within their vehicle in Illinois, if the concealed firearm remains within the vehicle of the nonresident. 430 ILCS 66/40(e) (West 2018). In the

underlying facts of the murder case, the firearm did not remain in the plaintiff's car. The plaintiff's reliance on a permit with the State of Virginia had no impact on, or benefit for, Gibbons when the Illinois Concealed Carry Act had its own permitting requirements for a license to carry a concealed handgun. Accordingly, the plaintiff has not shown that the defendant is a third-party beneficiary under the plaintiff's alleged contract with the State of Virginia.

¶ 26     While considering the breach of contract claim, the trial court also considered the plaintiff's claims under 42 U.S.C. § 1983 as an assertion of civil rights violations. Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights under color of state law. 42 U.S.C. § 1983 (2018). The plaintiff denied raising a cause of action for a civil rights violation under 42 U.S.C. § 1983. However, in the plaintiff's complaint, he alleged that Gibbons violated the contracts clauses of the United States and Illinois Constitutions by interfering with the plaintiff's contract with the State of Virginia that allowed him to carry a concealed weapon. Additionally, the plaintiff's complaint asserted a violation of his second amendment right to bear arms. And, each count pled by the plaintiff sought damages for his loss of liberty.

¶ 27     The trial court also considered whether the claims filed by the plaintiff were a collateral attack on his murder conviction or his sentencing. In *Heck v. Humphrey*, the United States Supreme Court considered the effect of filing a case to recover damages in a section 1983 claim and stated:

> "We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a

§ 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." (Emphasis in original.) *Heck*, 512 U.S. at 486-87.

¶ 28    For damages to be awarded against Gibbons based on loss of liberty, the court would had to have found that the plaintiff's conviction was invalid based on the actions by the prosecutor. A prisoner has no cause of action under section 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of *habeas corpus*. *Heck*, 512 U.S. at 489. The plaintiff filed his complaint while incarcerated and his complaint did not allege that his sentence was reversed, expunged, invalidated, or impugned by the grant of a writ of *habeas corpus*. Since the plaintiff argued that Gibbons violated the plaintiff's constitutional rights that caused injury in the form of loss of liberty and lost economic damages, we agree that the plaintiff alleged civil rights violations in his complaint. The trial court did not err in granting the motion to dismiss when it construed the plaintiff's claims in the context of a section 1983 action and found that the plaintiff's complaint was a collateral attack on the plaintiff's murder conviction.

¶ 29    Furthermore, government officials, such as Gibbons, sued in their individual capacities for civil rights violations can be entitled to either qualified or absolute immunity from damages. *Filarsky v. Delia*, 566 U.S. 377, 390 (2012). The purpose behind either form of immunity is to ensure that the government officials are able to perform their public duties without being in fear of being sued for damages. *Filarsky*, 566 U.S. at 390. The defendant in this action was sued after his office prosecuted the plaintiff for first degree

murder. The burden to prove that immunity exists is on the party seeking the immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).

¶ 30    The defendant's office prosecuted the plaintiff in his murder trial. Prosecutors acting within the scope of their prosecutorial duties performing traditional functions of an advocate are afforded absolute immunity. *White v. City of Chicago*, 369 Ill. App. 3d 765, 769 (2006). The immunity is broad and covers most aspects of the prosecutor's duties, including decisions about whether to prosecute an individual and actions carried out during the judicial process. *Van de Kamp v. Goldstein*, 555 U.S. 336, 343 (2009). If prosecutors are not acting in their role as an advocate, qualified immunity can apply to activities such as acting as a complaining witness or providing a supporting affidavit to establish probable cause for an arrest. *Malley v. Briggs*, 475 U.S. 335, 340-41 (1986). In an attempt to claim that absolute immunity did not apply to Gibbons or the prosecutors in his office, the plaintiff argued that the actions by the prosecutor were "investigative" or "administrative." The plaintiff's use of the terms "investigative" and "administrative" is misplaced. For example, the first "investigative" action alleged by the plaintiff occurred on May 4, 2009, when the information containing the charges was filed by the defendant's office against the plaintiff. A prosecutor's preparation and filing of an information against the defendant and the issuance of a motion for an arrest warrant are protected by absolute immunity as those actions are functions of an advocate. *Kalina v. Fletcher*, 522 U.S. 118, 128 (1997). The plaintiff additionally mischaracterized the providing of, and responding to, discovery requests in the criminal case as "administrative" actions.  This argument is also unavailing. The allegations in the complaint by the defendant all occurred while the defendant was

12

acting as an advocate to prosecute the plaintiff in the murder trial; therefore, the defendant had absolute immunity against the plaintiff's claims.

¶ 31                                    B. Default Judgment

¶ 32    We turn next to the plaintiff's contention that the trial court abused its discretion in denying the plaintiff's motion for default judgment. The plaintiff asserted that Gibbons was four days past the deadline to appear and that, as a result of the delay, a $24.6 million judgment should have issued in the plaintiff's favor, by default. The trial court's order denying the motion for default judgment stated that it gave due consideration to the motion and response.

¶ 33    In deciding whether to grant or deny a default judgment, the overriding consideration is "whether substantial justice is being done" between the parties and whether it is reasonable under the facts to compel the parties to trial. *Walker v. Monreal*, 2017 IL App (3d) 150055, ¶ 28. Additionally, a default judgment is one of the most drastic sanctions, and it should be used as a last resort. *Wollschlager v. Sundstrand Corp.*, 143 Ill. App. 3d 347, 349 (1986). Decisions by the trial court to grant or deny a motion for default judgment will be reversed only for if there is an abuse of discretion. *Walker*, 2017 IL App (3d) 150055, ¶ 28. In *Walker*, even though the plaintiff filed two motions for default and the defendant failed to file an answer within the extension of time provided, the trial court's decision to deny a motion for default judgment was affirmed because substantial justice would not have been accomplished by granting a default motion where the complaint failed to state claim. *Walker*, 2017 IL App (3d) 150055, ¶¶ 7, 28.

13

¶ 34    The trial court may enter a default judgment for want of an appearance or a failure to plead. 735 ILCS 5/2-1301(d) (West 2018). When the summons requires an appearance within 30 days, an answer or appropriate motion shall be filed on or before the last day on which he or she was required to appear.  Ill. S. Ct. R. 181 (eff. Jan. 1, 2018). The service date in the record is not clear because the return of service had two dates, May 10, 2019, and May 29, 2019. If service was effectuated on May 29, 2019, then the defendant would have entered his appearance within 30 days of service.

¶ 35    Even if the plaintiff had clearly demonstrated that the defendant was served on May 10, 2019, a motion for default judgment is not automatically entered after the 30-day period to appear expires since the trial court has discretion to deny a motion for default judgment. *Wollschlager*, 143 Ill. App. 3d at 349. The trial court may also extend the time for filing any pleading required to be done within a limited period before or after the expiration of the time. Ill. S. Ct. R. 183 (eff. Feb. 16, 2011). In this case, the trial court entered an order allowing the defendant additional time to plead and the defendant filed a responsive pleading within the additional time period allowed by the court.

¶ 36    The trial court did not abuse its discretion in denying the plaintiff's motion for default judgment for a $24.6 million judgment. Gibbons timely filed his responsive pleading in response to the plaintiff's complaint.

¶ 37                    C. Denial of Request for Prisoner to Appear in Person

¶ 38    The plaintiff appealed the denial of a writ of *habeas corpus ad prosequendum*. A writ of *habeas corpus ad prosequendum*'s function is to secure the presence of a defendant in federal criminal cases for trial. *United States v. Mauro*, 436 U.S. 340, 341 (1978). The

14

trial court considered the blank writ filed without a supporting motion as a request to appear on a specific hearing date. The hearing date was vacated, and the court allowed for both parties to submit proposed orders before it eventually entered the final order based on the pleadings.

¶ 39 Prisoners are not free to attend trials in civil cases, even though they may be party to the proceedings. *In re Marriage of Allison*, 126 Ill. App. 3d 453 (1984). The trial court has discretion to grant prisoner relief that allows him to personally appear in a civil proceeding. *Beahringer v. Roberts*, 334 Ill. App. 3d 622, 629 (2002) (prison inmate was not denied effective access to the court, even though trial court denied inmate allowance to personally appear at hearing on defendants' motion to dismiss civil action brought by inmate, where trial court had discretion to deny this request, and trial court considered inmate's thorough written response). Some relevant considerations for the trial court to consider are whether the prisoner has showed a probability of success and whether testimony is needed. *In re Marriage of Allison*, 126 Ill. App. 3d at 459. In this case, the trial court reviewed the pleadings and allowed both parties to submit proposed orders in support of their pleadings. The plaintiff filed extensive pleadings and did not provide argument on what testimony he would have provided that would have potentially changed the outcome of the motion hearings had he been allowed to appear in person. The trial court did not abuse its discretion when it did not issue a writ for the plaintiff to appear in court.

¶ 40                                     III. CONCLUSION

¶ 41    For the reasons stated, we affirm the order of the trial court.

¶ 42    Affirmed.

15