In re Vernon L. CONDICT, Debtor.

Vernon L. CONDICT, Appellant,

v.

Brenda CONDICT, Appellee.

Bankruptcy Nos. 84 B 11081, 86 C 5705.

United States District Court, N.D. Illinois, E.D.

March 12, 1987.

John E. Becker, Jr., Timpone & Rickelman, Chicago, Ill., for appellant.

G. Alexander McTavish, Ruddy, Myler, Ruddy & Fabian, Aurora, Ill., for appellee.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This is an appeal from a final order of the bankruptcy court, granting appellee Brenda Condict's motion for summary judgment on her adversary complaint, which sought a determination that appellant Vernon Condict's debt to her is nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(6). For the following reasons, the bankruptcy court's order is affirmed.

### FACTS

The Condicts were formerly husband and wife. A petition for the dissolution of their marriage was filed in the Circuit Court of Kane County on August 16, 1979. The state court ordered Vernon Condict to continue to make regular mortgage payments on the marital residence; this order remained in effect although Brenda Condict was eventually awarded sole ownership of the home. On at least four occasions in 1980 and 1981, the state court, prompted by Brenda's petitions for a rule to show cause, found that Vernon had failed to comply with the court's order requiring him to make the mortgage payments. Eventually, the mortgagee, Geneva Savings and Loan Association, foreclosed its mortgage on the home, and on August 11, 1981, the home was sold at a foreclosure sale for $25,477.33. The redemption period expired on February 16, 1982.

On May 21, 1982, Brenda filed a petition in the dissolution proceeding seeking a judgment against Vernon for $38,000, the amount of her equity in the marital residence which was lost as a result of his allegedly willful and vexatious refusal to make the mortgage payments. After a four-day trial, the state court judge found that Vernon had made no mortgage payments after November 30, 1980; that he, by his own admission, knew that the mortgage was delinquent at the time the judgment of dissolution was entered on January 12, 1981; and that he earned $31,729.34 in 1981; and that Brenda was not in a position to bring the mortgage current because Vernon had failed to make timely support payments to her. The judge further found that Vernon had the ability to make the mortgage payments but had failed and refused to do so and that his actions were in "willful contempt of the orders of this court entered over a long period of time." On January 30, 1984, the judge ordered Vernon to pay Brenda $38,000.

In September 1984, Vernon filed a chapter 7 bankruptcy petition. Among the debts he sought to have discharged was the $38,000 state court judgment. Brenda filed an adversary complaint in the bankruptcy proceeding, seeking to have the debt declared nondischargeable. Based on the record of the state court proceedings, the bankruptcy court found the debt nondischargeable under 11 U.S.C. § 523(a)(6) and entered summary judgment in Brenda's favor in the amount of $38,000. This appeal followed.

## DISCUSSION

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or the property of another entity." The term "willful" means "deliberate or intentional," and "malicious" means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill will." *In re Meyer*, 7 B.R. 932, 933 (Bankr.N.D.Ill.1981); *see also LeaseAmerica Corp. v. Eckel*, 710 F.2d 1470, 1474 (10th Cir.1983); *Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241, 245 (5th Cir.1983). Thus, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury. 3 Collier on Bankruptcy ¶ 523.16 (15th ed. 1979).

The bankruptcy court's finding that Vernon's debt to his ex-wife arose from a willful and malicious injury was based on the record of the state court. It is clear that the doctrine of collateral estoppel may apply to preclude litigation of the question of dischargeability in the bankruptcy court. *See Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) (res judicata not applicable to discharge cases, but collateral estoppel applicable if warranted by state court record); *see also In re Ross*, 602 F.2d 604, 607–08 (3d Cir.1979). Collateral estoppel has been used to support an award of summary judgment in discharge cases. *United States Life Title Insurance Co. v. Dohm*, 19 B.R. 134, 137 (N.D.Ill. 1982). A court may properly apply the doctrine of collateral estoppel where four conditions are met:

1. The issue sought to be precluded must be the same as that involved in the prior action;

2. The issue must have been actually litigated;

3. It must have been determined by valid and final judgment;

4. The determination must have been essential to the prior judgment.

*Dohm*, 19 B.R. at 137; *see also Ross*, 602 F.2d at 607–08. In this case, all four conditions are met.

■ First, the issue the bankruptcy court found precluded, whether Vernon's debt to his ex-wife arose from a willful and malicious injury, was involved in the state court proceedings. Brenda alleged in her petition in the dissolution proceedings that Vernon "willfully and vexatiously refused" to comply with the court's orders requiring him to make mortgage payments and that her loss of equity in the house was "a direct result of [Vernon's] willful, wanton, vexatious, and contemptuous conduct." Petition, ¶¶ 9, 11. Second, the issue was

fully litigated in the state court. The state court held a four-day trial on issues raised by the petition; both parties were represented by counsel at that trial. Third, the judgment entered by the state court was valid and final. Fourth, the state court necessarily determined that Vernon acted willfully and maliciously. In his opinion letter, the judge expressly stated that Vernon acted "in willful contempt of the orders of this court entered over a long period of time." It is true, as the bankruptcy court noted in its oral ruling, that the state court judge never used the term "malicious." However, the bankruptcy court concluded that the state court judge had necessarily determined that Vernon's failure to comply with court orders was unexcused. This conclusion is fully supported by the state court judge's opinion, finding that Vernon knew that the mortgage was delinquent and had money available to cure the delinquency but nevertheless failed to do so. A determination that Vernon's conduct was unexcused was the equivalent of finding that his conduct was malicious as contemplated by section 523(a)(6).

Vernon argues that the bankruptcy court should not have applied collateral estoppel for several reasons. He admits that the state court found that he had intentionally violated its orders and that his conduct supported such a finding, but argues that the state court never found that he "maliciously caused the home to be sold in foreclosure." Vernon contends that he should be permitted to show that he believed he made enough payments to ensure that the house would not be sold in foreclosure. This belief, however, has no bearing on the question of whether Vernon's failure to comply with the court orders was malicious or unexcused.

 Second, Vernon contends that because he made some of the required mortgage payments, as opposed to having made none at all, he could not be found to have acted maliciously. As previously discussed, a finding of malice does not require a finding of ill will, but rather a lack of just cause or excuse. Making some of the

mortgage payments did not excuse Vernon's failure to make the others.

Finally, Vernon argues that he should be given an opportunity to establish that he was financially unable to make the mortgage payments. Presumably, Vernon believes that an inability to pay would provide just cause for disobeying the court's orders or indicate that he lacked intent. But, as the bankruptcy court noted, the state court already determined that Vernon could have made the payments but failed to do so, in willful contempt of the court's orders.

As the bankruptcy judge stated, "The bottom line ... is very simple. The debtor has had his day in court and lost." The issues of intent and malice were fully litigated and necessarily determined in the state court proceedings, and the bankruptcy court's application of collateral estoppel was proper. Therefore, the bankruptcy court's order granting summary judgment in Brenda Condict's favor is affirmed.