In re Joseph F. DVORAK, IV, Debtor.

William BRILL, Plaintiff,

v.

Joseph F. DVORAK, IV, Defendant.

Bankruptcy No. 89 B 05516.
Adv. No. 89 A 0605.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Sept. 7, 1990.

Duane Donahue, Cary, Ill., for plaintiff.

Joseph F. Dvorak, IV, Stockton, Ill., pro se.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

Defendant Joseph F. Dvorak, IV ("Debtor") is a debtor under Chapter 7 of the Bankruptcy Code. The Plaintiff William Brill ("Brill"), a creditor in Debtor's bankruptcy case, filed this Adversary Complaint to have Debtor's obligation to him declared nondischargeable pursuant to 11 U.S.C. § 523(a)(6). On July 18, 1990 a trial on the issues raised in the Adversary Complaint was held. This Court has considered the evidence and the arguments of counsel and now makes and enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Debtor was an attorney licensed to practice law in the State of Illinois. He was engaged in the practice of law within this state at all times mentioned in these Findings. During 1980 Debtor's principal practice was in St. Charles, Kane County, Illinois. Stipulation ¶¶ 4, 5.

On or about May 5, 1980 Brill was sued as defendant in a lawsuit brought by the First Security Bank of Aurora ("Bank") in the Circuit Court of Kane County (hereinafter the "Bank's lawsuit"). Id. ¶ 2. The Bank's case against Brill was based on an unpaid promissory note that Brill allegedly signed. Brill contended that the signature was a forgery.

Shortly after being served with a summons in the Bank's lawsuit, Brill contacted James A. Regas of the law firm of Regas & Frezados to seek counsel to defend him in the Bank's lawsuit. R. Kymn Harp, an associate of Regas's at the time, was assigned by Regas to aid Brill.

At Regas's direction Harp contacted Debtor with request that he defend Brill's case. Harp contacted Debtor because Debtor was a friend of Regas and because the suit was filed in Kane County, Illinois, where Debtor practiced law. Regas & Frezados did not usually handle cases in that area of the state. In their conversation, Harp and Debtor discussed whether it would be advisable to employ a handwriting expert to support Brill's theory that his signature had been forged, and if so, who would make the necessary arrangements. Debtor agreed to represent Brill.

Following their phone conversation, Harp sent Debtor a letter dated June 18, 1980. The letter enclosed documents pertinent to the Bank's lawsuit and stated:

> Please handle this matter as you see fit. You may contact Bill Brill directly at 2334 Eastview Drive, Des Plaines, Il 60018, or by phone at 296–5921.

Plaintiff's Ex. 2. Debtor received the mailed letter and enclosures. However, he testified that although he remembers talking to Harp, he doesn't recall receiving this letter. Debtor also testified that he cannot find his file relating to the Bank's lawsuit. On July 15, 1980 Debtor filed an appearance on behalf of Brill in the Bank's lawsuit in the Circuit Court of Kane County. At a hearing in that court when that appearance was filed, Debtor arranged for entry of an order extending time for Brill to answer the Bank's complaint until August 14, 1980. However, Debtor never filed an answer, nor did he take any other action on Brill's behalf during the extended period. Further, Debtor never had any direct communication with Brill until 1988 and he never billed Brill. Having agreed to represent Brill and having then filed an appearance for him, Debtor simply walked

away from the case without any communication to his client.

Debtor testified that he took no further action on behalf of Brill after the July, 1980 hearing because he filed the appearance only as an accommodation to Regas & Frezados. He denies that Brill was actually his client. This testimony was neither credible nor corroborated. Debtor's testimony was contradicted by Harp's testimony that the case had been referred to Debtor; by Harp's June 18, 1980 referral letter; by Debtor's act in appearing for Brill both in open court and by filed appearance; and by the fact that Debtor did not inform Harp that he had arranged for an extension in which to file an answer on Brill's behalf and that Harp should follow through and file the answer by August 14, 1980. Debtor undertook unequivocal responsibility as counsel for Brill when Brill's case was referred to him in the late spring of 1980. However, he never filed an Answer to the Bank's Complaint.

On August 14, 1980 a default judgment was entered by the State Court in favor of the Bank and against Brill in the amount of $1,686.40 plus costs.

Following entry of the default judgment, a letter dated September 9, 1980 was mailed to Debtor by Richard L. Horwitz, counsel for the Bank. The letter stated that a default judgment had been entered "against your client on August 14, 1980." Debtor denies receiving this letter, but has no office file to corroborate that denial. A copy of this letter was admitted into evidence; it was obtained from Harp's files. The Court finds that the letter was mailed to and received by Debtor less than 30 days after the judgment was entered. However, he did not inform Brill about the letter or default judgment, and took no steps at that time to have the judgment vacated. Indeed, he took no action at all for 23 months after receiving that letter.

In the spring of 1982 Brill attempted to co-sign a loan application to assist his son

in purchasing a car. His loan application was denied because the Bank's judgment against Brill was outstanding. That was the first knowledge Brill had of the judgment. Brill was very upset over this incident. He took this news to Harp.

On March 1, 1982 Harp mailed a letter to Debtor stating that a default judgment had been entered against Brill and that Brill was considering a malpractice suit against Debtor. Plaintiff's Ex. 3. Debtor received that letter shortly afterward. However, for over five months he took no action after receiving this second notice concerning the default judgment.

On August 13, 1982 Debtor finally filed on Brill's behalf a motion in the state court suit to vacate the Bank's default judgment against Brill. The motion pleaded that Brill had a good defense. That motion was filed one day short of two years after entry of the default judgment. However, Debtor never pursued this motion in any way. He did not notice up the motion and it was never heard by or presented to the state court judge.

At trial of this Adversary case, Debtor was asked why he did not pursue the motion to vacate. He had no explanation. After a long pause, he testified only that his failure to follow through on that motion must have been due to the press of other business.

When questioned by this Court as to his health during this time period, Debtor stated that he was having emotional problems. However, his discussion of those alleged difficulties was very vague. He did not even see a doctor on those complaints until 1988. The Court does not find from the evidence that Debtor suffered from any illness that impaired his ability to fulfill his obligations on behalf of Brill, his client.

Brill paid the Bank's judgment against him in full.

Brill later filed a six count suit against Debtor (hereinafter "the suit").[1] Count I

---

1. Brill did not directly move to admit into evidence the complaint he filed in the malpractice suit or any other portion of the record in that case. The pretrial order, however, specifically

provided that "[a]ll well pleaded facts admitted in the pleadings are admitted into evidence." Debtor admitted that judgment had been entered against him on Counts I–VI. Brill at-

alleged that Debtor had breached an implied contractual duty to exercise ordinary care in rendering legal services. Count II alleged negligence. Each of these counts sought judgment in the amount of $1,686.40, the amount Brill had paid to Bank on the default judgment. Counts I and II pleaded alternative theories for recovery of that amount.

Counts III and IV each sought judgment in the amount of $15,000 for the "embarrassment and mental distress" caused by having the loan application refused in his son's presence. The refusal of the loan application was allegedly due to the fact that the Bank's default judgment was outstanding. Again, these counts pleaded alternative theories for recovery of that amount.

Counts V and VI each sought punitive damages in the amount of $50,000. Count V alleged that Debtor:

> willfully and wantonly breached his contractual duty to plaintiff to exercise ordinary care, skill and diligence in rendering professional legal services for plaintiff, in that defendant knew that his failure to take any action to vacate the default judgment against plaintiff, would result in plaintiff being liable on a judgment to which plaintiff had a valid defense.

Count VI alleged that Debtor was "willfully and wantonly negligent" for the same conduct described in Count V.

Debtor testified that he filed an appearance and answer in the malpractice case. Brill subsequently moved for summary judgment. Debtor testified that he did not respond to the motion for summary judgment. He claimed that he never received notice of that motion. However, he never moved to vacate the summary judgments that were subsequently entered against him.

On February 21, 1984 summary judgments were entered in favor of Brill and against Debtor on all counts. Judgment was entered in the amount of $1,686.40 on Counts I and II of the Complaint. Stipula-

tion ¶ 7. Judgment was also entered in the amount of $15,000 under Counts III and IV, and on the issue of liability under Counts V and VI. On October 2, 1984, judgment was entered in the amount of $100,000 on Counts V and VI against Debtor and in favor of Brill "as and for punitive damages." The state court thereby appears to have allowed $50,000 on each of the latter two counts.

Fact statements set forth in the Conclusions of Law will stand as additional Findings of Fact.

The Findings of Fact set forth herein were supported by clear and convincing evidence.

## CONCLUSIONS OF LAW

### A. *Jurisdiction*

United States District Courts have subject matter jurisdiction over cases under Title 11 of the United States Code and over proceedings arising under, arising in, or related to a case under Title 11. 28 U.S.C. § 1334. The United States District Court for the Northern District of Illinois through Local Rule 2.33 has referred such cases and proceedings to the bankruptcy judges in this district as authorized under 28 U.S.C. § 157(a).

In core proceedings arising in or arising under Title 11, a bankruptcy judge may "hear and determine" the proceeding. 28 U.S.C. § 157(b)(1). A proceeding to determine the dischargeability of a debt is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

### B. *Nondischargeability*

Brill argues that the judgment he obtained against Debtor in state court should not be discharged by Debtor's bankruptcy because the debt represented by it was for injuries willfully and maliciously inflicted. Section 523 of the Bankruptcy Code provides:

---

tached the state court complaint to the Adversary Complaint and adopted it by reference, and that document was not denied by Defendant.

Through the Pretrial Order, the state court complaint therefore came into evidence.

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

. . . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

Brill contends that because the state court found that Debtor's conduct warranted punitive damages, Debtor should be collaterally estopped from relitigating whether his conduct was "willful and malicious." Alternatively, Brill contends that the evidence adduced at trial proves that Debtor's conduct was "willful and malicious." Brill therefore asserts that judgment in this adversary proceeding should be entered in his favor under 11 U.S.C. § 523(a)(6).

### 1. Collateral Estoppel

The Seventh Circuit has addressed the application of collateral estoppel in the context of an effort to bar a debt from discharge. *Klingman v. Levinson*, 831 F.2d 1292, 1294–95 (7th Cir., 1987) (applying 11 U.S.C. § 523(a)(4)—defalcation while acting in a fiduciary capacity). In *Klingman* the Seventh Circuit observed that some courts, because of the bankruptcy courts' exclusive jurisdiction in determining dischargeability, give no collateral effect to state court proceedings. However, it specifically rejected this position, stating that "[w]here a state court determines factual questions using the same standards as the bankruptcy court would use, collateral estoppel should be applied to promote judicial economy by encouraging the parties to present their strongest arguments." Id. at 1295 (emphasis added). *See also Cohen v. Bucci*, 905 F.2d 1111 (7th Cir.1990). The *Klingman* opinion then outlined four elements that must be met for the collateral estoppel doctrine to be applicable: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the determination must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must have been fully represented in

the prior action. *Klingman*, 831 F.2d at 1295.

In this case, the details of what transpired in the state court malpractice suit are very sketchy. Only a copy of the malpractice complaint and the judgments entered in that case have been admitted into evidence. *See supra* note 1. Debtor testified that he filed an Answer to the malpractice complaint, but did not receive notice of Brill's motion for summary judgment and therefore he did not file any opposition to that motion nor did he appear at the hearing on that matter. The Answer in that case was not offered into evidence. This raises the question of whether the issues upon which judgments on Counts I–VI were entered were "actually litigated" in the state court such that collateral estoppel would bar litigation of those issues in this proceeding.

■ Collateral estoppel "relieves parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). "The same person may demand a judicial determination of the same issue only once." 1B *Moore's Federal Practice* (2nd ed.) .443[1] at 758. The situation most clearly contemplated by the "actually litigated" standard is the resolution of a dispute following a full trial on the merits. Entry of judgment pursuant to motion for summary judgment or motion for failure to state a claim satisfies the "actually litigated" standard only if the party against whom judgment was entered had proper incentive to and did in fact fully contest the motion on the merits. *United States Life Title Insurance Co. v. Dohm*, 19 B.R. 134, 138 (N.D.Ill.1982). *See Bucci*, 905 F.2d at 1112–13 (noting that inadequate incentive to litigate may prevent collateral estoppel from applying). In those situations the benefits from precluding further litigation outlined above provide compelling reasons not to give a party a second bite at the apple.

The "actually litigated" element, however, indicates that concern for judicial

economy is tempered by need for some assurance that resolution of issues in the first proceeding is reliable. The traditional approach in our legal system for assuring that resolution of factual disputes and legal issues are accurate and fair is to have the parties to the dispute protect their own interests. The theory is that interplay between adversaries who vigorously protect their own interests will permit the dispute to be resolved in the most accurate manner possible. As one treatise has explained in the context of discussing default and consent judgments:

> Adversary litigation is one of the guarantees of a correct determination in a procedural system that depends upon party prosecution rather than affirmative judicial inquiry. Stripped of this guarantee, a judgment is an adjudication only in the sense that it disposes of the cause of action before the court. Such a judgment is not a reliable adjudication of any issue except for that case, and should not have collateral estoppel effect.

1B *Moore's* ¶ .443[3] at 768.

These policy concerns are reflected in cases addressing the collateral estoppel effect to be given a default judgment. When a default judgment is entered, the party against whom estoppel is sought had an opportunity to litigate the issue in the prior proceeding and either failed or chose not to do so. Notwithstanding the party's opportunity to litigate, most authority has concluded that a default judgment cannot serve as predicate on which to base collateral estoppel unless the application of the estoppel to some subsequent proceeding was foreseeable when the default was entered. *In re Martinez*, 110 B.R. 353, 355–56 (Bankr.N.D.Ill.1990) *citing In re Rudd*, 104 B.R. 8, 20–21 (Bankr.N.D.Ind.1987) (collecting cases). *See also* 6 *Moore's* ¶ 55.09 at 55–46 ("[T]he majority and better reasoned view is that a default judgment has no collateral estoppel effect."). However, *see In re Austin*, 93 B.R. 723, 727 (Bankr.D.Colo.1988) (party who consented to entry of a default judgment in state court after bankruptcy court abstained was collaterally estopped from relitigating issues in bankruptcy court).

The Sixth Circuit has explained:

> If the important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in the bankruptcy court.

> Thus, before applying the doctrine of collateral estoppel, the bankruptcy court must determine if the issue was actually litigated and was necessary to the decision in the state court. To do this, the bankruptcy court should look at the entire record of the state proceeding, not just the judgment, ... or hold a hearing if necessary.

*Spilman v. Hurley*, 656 F.2d 224, 228 (6th Cir.1981).

No authority was located which specifically addressed whether judgment entered when a party fails to respond to a motion for summary judgment has been "actually litigated" for collateral estoppel purposes. *Cf. Dohm*, 19 B.R. at 134 (issue actually litigated when state court conducted a full hearing on creditor's motion for summary judgment even though the debtor later contended that he was "without counsel" at the time). One way to approach this question is to determine whether the judgment entered when Debtor failed to respond to Brill's motion for summary judgment is qualitatively different from a default judgment.

■ Under federal court practice, when a party fails to file an answer or otherwise fails to respond to a complaint, the clerk is to enter a default. Fed.R.Civ.P. 55(a).

> A default judgment does not follow as a matter of right, however, after entry of default. Judgments by default may be granted only for such relief as may lawfully be granted upon the well-pleaded facts alleged in the complaint. While well-pleaded facts alleged in the complaint are deemed admitted on entry of default, plaintiff's conclusions of law are not deemed admitted or established, and the court may grant only the relief for which a sufficient basis is asserted in the complaint.

6 *Moore's* ¶ 55.03[2] at 55–10 (discussing Fed.R.Civ.P. 55). A court does not necessarily make an independent inquiry into the veracity of the factual allegations in the complaint that serve as the basis for the default judgment. *Cf.* Ill.Rev.Stat. ch. 110, ¶ 2–1301(d) (court may require proof of the allegations in the pleadings when considering the entry of a default judgment, though that is not required).

▪ On the other hand, a party is entitled to summary judgment only if pleadings, affidavits, dispositions, and admissions on file, show that there are no genuine issues of fact and the moving party is entitled to judgment as a matter of law. Ill.Rev.Stat. ch. 110, ¶ 2–1005(c). One treatise discussing Federal Rule of Civil Procedure 56, the federal law counterpart to ¶ 2–1005(c), has explained:

> [T]he real function of summary judgment procedure is to go beyond the pleadings and present matters by affidavit, depositions, admissions, answers to interrogatories, or other extraneous materials for the purpose of showing that despite issues of fact raised by the pleadings there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

6 *Moore's* ¶ 56.09 at 56–91.

Judgment pursuant to an unopposed motion for summary judgment might well be more "reliable" than a default judgment. In contrast to the default judgment situation (where the court considers only the facts as alleged in the complaint), before granting summary judgment a court is required to examine materials demonstrating at least *prima facie* the factual predicate underlying an unopposed motion for summary judgment, so as to assure that the facts entitle the moving party to judgment. However, the court makes no independent inquiry into the evidence.[2] Indeed, a court may treat a failure to oppose a summary judgment motion as just a form of default judgment. 6 *Moore's* ¶ 55.02[3] at 55–10 n. 12 (collecting cases).

▪ When judgment is entered pursuant to an unopposed motion for summary judgment, as with most default judgments, the court has not heard the arguments or evidence of the party against whom judgment was entered. Examination by a court of documentary evidence submitted by one party in support of its motion for summary judgment to see if plaintiff's *prima facie* burden is met is qualitatively different from a court or jury evaluating evidence after the opposing party has contested the moving party's evidence. The phrase "actually litigated" suggests that all parties to a dispute have been actively involved throughout the proceeding and have presented evidence and advocated their positions. The phrase "actually litigated" should not be read to refer only to the level of independent judicial inquiry into the *prima facie* showing of facts underlying an undefended motion for summary judgment.

Therefore, Debtor here is not collaterally estopped by the unopposed state court summary judgment against him from litigating the issue of whether his conduct was willful and malicious. That issue was not "actually litigated" in state court. A contrary conclusion might well be reached had the debtor actively opposed the motion but lost because he presented no triable issue of fact and lost under the applicable

---

**2.** Under Northern District of Illinois Local Rule 12(*l*), a party moving for summary judgment must file a "Statement of Undisputed Material Facts" in support of its motion for summary judgment. The party opposing the motion for summary judgment is required to respond to each of the asserted facts. If the opposing party fails to respond, each of the asserted facts is deemed admitted. Local Rule 12(m). Under this rule, because the facts are deemed admitted when a party fails to respond to the Statement of Undisputed Material Facts a court is unlikely to probe independently into the evidence supporting the motion. In other words, the court functions in a manner not unlike the way it would in a default judgment situation. The only difference is that if the moving party conducted discovery, the facts asserted in the Statement of Undisputed Material Facts might be more accurate than those alleged in the complaint. In both situations, however, the accuracy of the facts is not subjected to any independent inquiry.

rule of law.[3] However, that is not this case, and collateral estoppel does not apply here.[4]

### 2. Section 523(a)(6)

Plaintiff did not rely solely on collateral estoppel. He offered direct evidence as well.

For Debtor's obligation to Brill to be nondischargeable under § 523(a)(6), Brill must prove that Debtor's conduct was both willful *and* malicious. *In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1986). Under § 523(a)(6), "willful" means deliberate or intentional. *In re Condict*, 71 B.R. 485, 487 (N.D.Ill.1987). Intent is not proven by establishing mere "reckless disregard." *United Bank of Southgate v. Nelson*, 35 B.R. 766, 770 (N.D.Ill.1983). "Malicious" means wrongful and without just cause or excuse, even in the absence of personal hatred or ill will. *Condict*, 71 B.R. at 487. In other words, Debtor's conduct was malicious if he was substantially certain that his actions or inactions would result in injury to Brill, but acted or omitted to act in disregard of that knowledge. *In re Schultz*, 89 B.R. 28, 29 (Bankr.E.D.Wis. 1988).

There is currently some difference in authority as to the creditor's burden of proof under § 523(a)(6). *Compare In re Bogstad*, 779 F.2d 370, 372 (7th Cir.1985) (stating generally that a party who seeks to establish an exception to discharge bears the burden of proof and the standard is one of clear and convincing evidence); *In re Iaquinta*, 98 B.R. 919, 923 (Bankr.N.D.Ill. 1989) (the standard under § 523(a)(2), (4), and (6) is one of "clear and convincing evidence."); and *In re Scarlata*, 112 B.R. 279, 288–89 (applying clear and convincing standard under § 523(a)(6)), with *In re Braen*, 900 F.2d 621 (3rd Cir.1990) (burden under § 523(a)(6) is the same as that necessary to establish the underlying debt); *Combs v. Richardson*, 838 F.2d 112, 116 (4th Cir.1988) (burden under § 523(a)(6) is by a preponderance of the evidence); *Martinez*, 110 B.R. at 356 n. 2 (the same). This Court reads *Bogstad* to require clear and convincing evidence under § 523(a)(6). See *Scarlata*, supra.

Brill did not contend and certainly did not prove that Debtor's original carelessness and neglect in allowing a default judgment to be entered against him was willful and malicious. However, Brill has proven by clear and convincing evidence that Debtor's conduct in failing to file and failing to pursue a timely motion to vacate the default judgment in Brill's case after that judgment was called to his attention was "wilful and malicious" within § 523(a)(6). The fact that Debtor eventually prepared and filed such a motion indicates he was aware of the risk that the judgment posed to his client, yet he failed to have that motion set for hearing or pursue it further.

---

3. Brill has not raised and therefore this court does not consider the application of 28 U.S.C. § 1738 to this case.

4. Given that a necessary element of the collateral estoppel doctrine has not been met, it is unnecessary to reach a number of other issues that arise in determining whether Debtor should be barred from litigating the issue of whether his conduct was wilful and malicious. As discussed, the first element of that doctrine requires that the same issue be involved in both causes of action. Specifically, the issue is whether "willful and wanton" as used in Counts V and VI of Brill's malpractice complaint is the same as "willful and malicious" under § 523(a)(6). *See In re Martinez*, 110 B.R. 353, 355 (Bankr.N.D.Ill.1990) (J. Barliant) ("[T]he elements of a state court action are rarely identical to the burden placed upon a creditor seeking to deny discharge of a debt, especially under 11 U.S.C. § 523(a)(6) where both willfulness and maliciousness must be proven."). Further, there is an issue as to whether the burden of proof in the original lawsuit was different than that in the present adversary, and if so, whether it prevents collateral estoppel from being applicable. *See In re Iaquinta*, 95 B.R. 576 (Bankr.N.D.Ill.1989) (burden of proof under § 523(a)(6) is by clear and convincing evidence). *Contra In re Braen*, 900 F.2d 621 (3rd Cir.1990) (the applicable burden of proof in a hearing to determine the dischargeability of a debt under § 523 should be the same as that required in the underlying litigation to establish the debt); *Martinez*, 110 B.R. at 356 n. 2 (burden under § 523(a)(6) is by a preponderance of the evidence). *See also In re Garner*, 881 F.2d 579 (8th Cir.1989) (jury verdict under a preponderance of the evidence standard cannot collaterally estop an issue where the burden of proof is clear and convincing evidence).

Indeed, Debtor failed to file such motion promptly upon being told about the judgment. He waited 23 months after first having notice of the default judgment. When he eventually filed but failed to pursue a motion to set aside the default judgment, he was aware of the consequences to Brill of such inaction. With full knowledge that the Bank's judgment would stand and be collected, Debtor initially failed to file the motion for 23 months. Then he failed to pursue his motion to vacate. "[A] finding of malice does not require a finding of ill will, but rather a lack of just cause or excuse." *Condict*, 71 B.R. at 488. Debtor's conduct in this regard was inexcusable, and resulted in an inevitable injury to his client, an injury that he knew would result from his inaction.

It might be argued that the debt owed to Brill should be dischargeable on the ground that it resulted from Debtor's initial negligence in ignoring the due date for filing an Answer, not from his later willful and malicious conduct. Entry of the judgment against Brill was initially caused by Debtor's negligent failure to defend the Bank's lawsuit which resulted in the entry of the default judgment against Brill. As previously discussed, debts resulting from negligent conduct are not excepted from discharge under § 523(a)(6). However, Debtor's willful and malicious behavior was his failure to file timely and then pursue a motion to vacate once he learned of the default judgment. Debtor might say that the latter conduct did not cause his debt to Brill to arise because that debt already existed from Debtor's prior negligence. Under this reasoning, Debtor's subsequent willful and malicious conduct could not cause the damage to Brill unless the motion to vacate would have been granted.

Under Illinois law if a motion to vacate a default judgment is made within 30 days after entry of such judgment, the court in its discretion may set aside the judgment "upon any terms and conditions that shall be reasonable." Ill.Rev.Stat. ch. 110, ¶ 2–1301(e). *See Meeker v. Gray*, 142 Ill. App.3d 717, 97 Ill.Dec. 72, 492 N.E.2d 508 (5th Dist.1986) (the main concern under ¶ 2–1301(e) is whether substantial justice is being done between the parties and this depends on whether defendant has shown a defense to the underlying cause of action). Brill's allegation that his signature was forged would likely have satisfied this standard. Debtor almost certainly would have succeeded in having the default judgment vacated had he filed a motion to that effect promptly upon receiving the first notice to him of the judgment within the 30 days following entry of judgment.

After 30 days has passed following entry of a default judgment, a motion to vacate that judgment must be brought under Ill. Rev.Stat. ch. 110, ¶ 2–1401. To be entitled to relief under this provision, the defendant must file the motion within two years after entry of the judgment and plead specific allegations supporting each of the following elements: (1) the existence of a meritorious defense; (2) due diligence in presenting this defense to the court, i.e., a reasonable excuse for not acting within the required time; and (3) due diligence in filing the ¶ 2–1401 petition for relief. *First National Bank of Mattoon v. Mattoon Federal Savings & Loan Assoc.*, 175 Ill.App.3d 956, 125 Ill.Dec. 508, 510, 530 N.E.2d 666, 668 (4th Dist.1988). While Debtor's motion was filed within two years following judgment, it is less certain that the remaining requirements would have been satisfied given the facts of this case. However, Debtor's failure to bring the motion to hearing made certain that his client would have to pay the judgment. Indeed, had Debtor taken steps to confess his error to the client and withdraw from the case, new counsel for Brill would have had a good argument under § 2–1401. It was Debtor's astonishing inaction and indifference to his client's fate that locked in harm to the client. It was that indifference and inaction even after he learned of the default judgment that constituted wilful and malicious conduct because it guaranteed harm to the client. And it was that inaction that caused the consequential damages assessed by the state court and lead to imposition of punitive damages by that court. Accordingly, Debtor's debt to Brill

flowed from his wilful and malicious conduct, not from his negligence.

### 3. Actual and Punitive Damages

 As previously discussed, the state court judgments in Brill's malpractice suit consist of (1) $1,686.40 plus costs, the amount Brill paid to Bank on the default judgment; (2) $15,000 to compensate Brill for the "embarrassment and mental distress" he incurred when the loan application was refused in his son's presence; and (3) $100,000 in punitive damages.[5] Those amounts of debt caused by the injury were fixed by *res judicata* effect of the state court judgment, and no basis for questioning those amounts has been shown by Defendant. *Brown v. Felson*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979).

 The final issue is whether the Debtor's entire judgment debt to Brill totalling $116,686.40 is nondischargeable, or just a portion thereof. "[O]nly that part of a debt based on wilful and malicious injury is nondischargeable." 1 Robert E. Ginsberg, *Bankruptcy*, § 11.06[i] at 941 (2nd ed.1989).

Under Illinois law punitive damages "are allowed in the nature of punishment and as a warning and example to deter the defendant and others from committing like offenses in the future." *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 565, 384 N.E.2d 353 (1978). There is a substantial split in authority on the issue of whether punitive damages are excepted from discharge under 11 U.S.C. § 523(a)(6).

A number of cases hold that debts for punitive damages are dischargeable. *See, e.g., In re Alwan Brothers Co.*, 105 B.R. 886, 890 (Bankr.C.D.Ill.1989) (punitive damages not excepted from discharge under § 523(a)(6)); *In re McDonald*, 73 B.R. 877, 882 (Bankr.N.D.Tex.1987) (same); *In re Miera*, 104 B.R. 150, 160 (Bankr.D.Minn.1989) (collecting cases under all subsections under § 523). Those cases advance several different theories in support of their position.

First, some cases assert that under § 523(a)(6) the exception from discharge is limited to the creditor's injury and the injury does not include punitive damages. However, in an earlier case, this Court has reasoned that the terms "willful" and "malicious" refer to the *act* resulting in injury and giving rise to the debt. The nature of the injury, independent from the act causing it, cannot be the basis for determining when a 'willful and malicious injury' has occurred. *Scarlata*, 112 B.R. at 289. Debtor's failure to timely file and then his failure to pursue his motion to vacate the default judgment both insured the consequential damages assessed by the state court to total $16,686.40 (under the first four counts) and was the basis for imposing punitive damages (under the last two counts of the complaint). Under 11 U.S.C. § 523(a)(6), was the "injury" said to result from this conduct merely $16,686.40 ($1686.40 + $15,000, the amounts of compensatory damages awarded), or did the "injury" include the punitive damages?

As one court reasoned:

Punitive damages ... were awarded as an example to others as a penalty or by way of punishment. It is obvious that the punitive damages awarded are not a debt for fraud or willful and malicious injury.

*McDonald*, 73 B.R. at 882. *See also Alwan·Brothers*, 105 B.R. at 890 ("Thus, punitive damages are not a debt for injury caused by a debtor's willful and malicious acts.").

Second, several courts have reasoned that a creditor is adequately compensated by award of its actual damages and that it violates the "fresh start" policy to hold punitive damages nondischargeable. *See,*

---

5. Under Illinois law, exemplary damages need not bear a proportional relation to compensatory damages. *Embassy/Main v. C.A.B. Leasing, Inc.*, 155 Ill.App.3d 427, 108 Ill.Dec. 170, 174, 508 N.E.2d 331, 335 (1 Dist.1987). Expenses and attorneys fees incurred by plaintiff may be considered. *Brown & Williamson Tobacco Corp. v. Jacobson*, 827 F.2d 1119, 1142 (7th Cir. 1987); *Anvil Investment v. Thornhill Condominiums Ltd.*, 85 Ill.App.3d 1108, 41 Ill.Dec. 147, 156, 407 N.E.2d 645, 654 (1 Dist.1980).

*e.g., In re Schmidt,* 36 B.R. 834, 836–37 (Bankr.D.Minn.1984).

> The Bankruptcy Court is not a forum for deterring misconduct. A dishonest debtor is penalized under Section 523(a)(2), (a)(4), or (a)(6) by not being absolved of his obligation to compensate certain creditors for the harm he has caused. But there is no punishment for punishment's sake in bankruptcy.

*Alwan Brothers,* 105 B.R. at 892.

Finally, some courts have reasoned that the dischargeability of noncompensatory damages is specifically addressed in § 523(a)(7), and only those noncompensatory damages owed to government entities are excepted from discharge. Our colleague Judge Ginsberg has ruled on this ground:

> In § 523(a)(7), Congress created a specific exception to discharge for noncompensatory damages. However, Congress clearly determined to not allow nongovernmental entities to seek the nondischargeability of punitive damages under § 523(a)(7). The language of § 523(a)(2)(A) and 523(a)(7) when read in harmony compel the conclusion that Congress intended noncompensatory damages to be excepted from discharge only where they are owed to a governmental entity pursuant to § 523(a)(7).

*In re Suter,* 59 B.R. 944, 947 (Bankr.N.D. Ill.1986) (addressing dischargeability of treble damages under RICO). A number of courts have used this reasoning to hold that punitive damages awarded in state court proceedings are dischargeable. *See, e.g., Alwan Brothers,* 105 B.R. at 891.

The author of one Supreme Court opinion has implied in footnoted dicta that he agrees with the reasoning of *Suter* (without citing that case). In *Kelly v. Robinson,* 479 U.S. 36, 51, 107 S.Ct. 353, 361–62, 93 L.Ed.2d 216 (1986), the opinion stated at fn. 13 that "[i]t seems likely that the limitation of § 523(a)(7) to fines assessed 'for the benefit of a governmental unit' was intended to prevent application of that subsection to wholly private penalties such as punitive damages."

There is a contrary line of cases. The lead case is *In re Adams,* 761 F.2d 1422 (9th Cir.1985). There judgment had been entered against the debtor for injuries he caused while driving in an intoxicated state. The judgment included both compensatory and punitive damages. The debtor conceded that the punitive damages were excepted from discharge, but argued that the compensatory damages were dischargeable. The Ninth Circuit rejected this position, holding that both compensatory and punitive damages were excepted from discharge under § 523(a)(6). The gist of the Ninth Circuit's reasoning was that all *liabilities* resulting from wilful and malicious conduct fall within § 523(a)(6).

> The exception [from discharge under § 35(a)(8) of the Bankruptcy Act of 1898] is measured by the nature of the act, *i.e.,* whether it was one which caused wilful and malicious injuries. *All liabilities resulting therefrom are nondischargeable.* One liability is limited to actual compensation.... But for this type of conduct, yet another liability may be incurred if the jury under proper instructions sees fit to award it. That is for punitive damages. Both types of liability are within the statute as "liabilities" for "wilful or malicious injuries to the person or property of another.

*Adams,* 761 F.2d at 1427–28 *quoting Coen v. Zick,* 458 F.2d 326, 329–30 (9th Cir.1972) (emphasis in original). The *Adams* court specifically noted that this reasoning was equally valid under § 523(a)(6).

The reasoning in *Adams* has been applied to situations where debtors contended that punitive damages were nondischargeable. *In re Johnson,* 1990 Bankr. LEXIS 782 (Bankr.N.D.Ind. February 23, 1990); *In re Horowitz,* 103 B.R. 786 (Bankr.N.D. Miss.1989); *In re Tobman,* 96 B.R. 429 (Bankr.S.D.N.Y.1989); *In re Austin,* 93 B.R. 723, 729 (Bankr.D.Colo.1988); *In re Nix,* 92 B.R. 164, 170 (Bankr.N.D.Tex. 1988); *In re Caldwell,* 60 B.R. 214 (Bankr. E.D.Tenn.1986).

The reasoning in *Adams* is persuasive. Section 523(a)(6) bars dischargeability "from any debt ... for wilful and mali-

cious injury by the debtor to another entity...." A "debt" is defined in the Bankruptcy Code as being a "liability on a claim." 11 U.S.C. § 101(11). Nothing in the wording of the statute or its history would warrant treating liability for punitive damages any differently than liability for compensatory damages, given the breath of the definition of "debt." In this case Debtor's willful and malicious conduct resulted in a debt totalling $116,686.40.

Further, notwithstanding contrary authority, a holding that punitive damages are nondischargeable is not at odds with the "fresh start" policy.

> The "fresh start" policy of the Bankruptcy Code should have no application to a debtor who has committed a nondischargeable act that is so grievous that after a full trial on the merits, [the trier of fact] finds punitive damages are appropriate based on clear and convincing evidence. The very purpose of § 523(a)(6) is in fact to penalize the debtor for his misdeeds where he has acted willfully and maliciously versus another entity, and thus the allowance of punitive damages is not inconsistent with the purpose of the Code in such an instance.

*Johnson*, 1990 Bankr. LEXIS 782.

### CONCLUSION

Clear and convincing evidence established that Debtor's failure to timely file and then his failure to pursue his motion to vacate the default judgment against Brill was "willful and malicious." His resulting debt to Brill is excepted from discharge under 11 U.S.C. § 523(a)(6). The amounts of Debtor's debt to Plaintiff as a result of that injury were liquidated by the state court judgments and those monetary judgments are *res judicata*. Therefore the entire total of the state court judgments amounting to $116,686.40 is nondischargeable.

At the close of Brill's case, Debtor moved for a directed verdict. The court at that time reserved judgment on that motion. For the reasons stated above, Debtor's motion will now be denied. Judgment will by separate order be rendered for Plaintiff.