In re Charles POLECHRONIS, Linda Polechronis, Debtors.

Charles POLECHRONIS and Linda Polechronis, Appellants–Defendants,

v.

CAPE COD NEEDLEWORKS, INC., Appellee–Plaintiff.

Civ. A. No. 95–10853–MEL.

United States District Court, D. Massachusetts.

Aug. 22, 1995.

William T. Stevens, Boston, MA, for debtors/appellants-defendants.

Norman G. Abromson, Canton, MA, for appellee-plaintiff.

LASKER, District Judge.

Charles and Linda Polechronis appeal from a determination of the United States Bankruptcy Court for the District of Massachusetts that the Polechronises' debt to Cape Cod Needleworks is nondischargeable under 11 U.S.C. § 523(a)(6). The Bankruptcy Court granted Cape Cod Needleworks' motion for summary judgment with respect to nondischargeability, holding that a state court summary judgment against Mr. and Mrs. Polechronis on counts of conversion, fraud, and violation of Mass.Gen.Law ch. 93A collaterally estopped the Polechronises from challenging nondischargeability under § 523(a). The Polechronises challenge the application of the doctrine of collateral estoppel, contending that the state fraud action was not "actually litigated," and that, therefore, the state judgment has no preclusive effect.

## I

Cape Cod Needleworks ("CCN") and the Polechronises contracted in 1989 to combine their businesses, each of which sold embroidered and imprinted sportswear to schools and other organizations. In 1990, their relationship ended, and CCN filed suit against the Polechronises in Plymouth Superior Court, alleging breach of contract, fraud, conversion, and violation of Mass.Gen.Law Ch. 93A. The Superior Court docket sheet reflects that the Polechronises did not file an answer to CCN's complaint, and appeared in court only once during the proceedings, to challenge a motion by CCN to hold the Polechronises in civil contempt in August 1990. The Polechronises were represented by counsel at the contempt proceeding. However, in February, 1991, the Polechronises' attorney moved to withdraw from the case. On the same day, CCN filed a motion for summary judgment as to liability. The Polechronises did not oppose or respond to CCN's motion. In August, 1992, the Plymouth Superior Court granted CCN's summary judgment motion. Judgment was entered June 18, 1992.

Mr. and Mrs. Polechronis filed for bankruptcy in 1994. Cape Cod Needleworks moved the bankruptcy court for summary judgment of nondischargeability under 11 U.S.C. § 523(a)(6), which prohibits the discharge of debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." CCN contended that the Plymouth Superior Court judgment precluded the Polechronises from challenging nondischargeability under the Bankruptcy Code. The Bankruptcy Court agreed, reasoning that because a summary judgment is a judgment on the merits, the Superior Court judgment represented "actual litigation," despite the fact that the Polechronises had failed to oppose it. Hearing transcript at 4.

## II

The Polechronises do not dispute that the doctrine of collateral estoppel applies in bankruptcy proceedings. This conclusion, reached by the Supreme Court in *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 and accompanying text (1991) ("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)"), was anticipated by the Bankruptcy Court for the District of Massachusetts in 1987: "That a federal court has exclusive jurisdiction over an ultimate legal determination does not mean that the underlying facts are so sacrosanct as to be subject to resolution only by that court." *In re Dubian,* 77 B.R. 332, 335 (Bankr.D.Mass.1987) (citing *Becher v. Contoure Laboratories, Inc.,* 279

U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752 (1929) (principles of collateral estoppel appropriate in the context of patent litigation)).

Although the central issue confronting the *Grogan* Court was the proper standard of proof applicable to the exceptions to dischargeability outlined in § 523(a), the facts of that case are somewhat similar to those at bar: There, a creditor sued a debtor in state court and proved by a preponderance of the evidence that the debtor had committed fraud. When the debtor thereafter declared bankruptcy, the creditor sought to use the state court judgment to estop the debtor from challenging the nondischargeability of his debt to the creditor under the Bankruptcy Code, which precludes a debtor from discharging debt incurred through fraud. 11 U.S.C. § 523(a)(2)(A). The *Grogan* Court observed, "[i]f the preponderance standard also governs the question of nondischargeability, a bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and that were actually litigated and determined in the prior action." *Id.* at 284, 111 S.Ct. at 658 (citing Restatement (Second) of Judgments § 27 (1982)).

■ Collateral estoppel operates where: (1) the issue sought to be precluded is the same as that involved in the prior action, (2) the issue has been actually litigated, (3) the issue has been determined by a valid and binding final judgment, and (4) its determination must have been essential to the judgment. *Grella v. Salem Five Cent Savings Bank,* 42 F.3d 26, 30 (1st Cir.1994).

■ The question presented by this appeal is whether the bankruptcy court correctly held that because CCN obtained a summary judgment in the state court proceeding, the underlying facts of that case were "actually litigated." Put another way, the issue presented is whether a summary judgment, standing alone, demonstrates that an issue has been actually litigated for purposes of collateral estoppel.

Several courts have considered the question, although it has not been addressed by the First Circuit.[1] Since *Grogan,* it is universally accepted that entry of summary judgment by a state court may preclude a debtor from challenging nondischargeability under § 523(a). There is some disagreement, however, over the vigor with which a motion for summary judgment must be opposed before the issues presented in it are deemed to have been "actually litigated." In *In re Dvorak,* 118 B.R. 619 (Bankr.N.D.Ill. 1990), the Court held that a judgment pursuant to motion for summary judgment "satisfies the 'actually litigated' standard only if the party against whom judgment was entered had proper incentive to *and did in fact* fully contest the motion on the merits." *Id.* at 624 (emphasis supplied). The *Dvorak* Court reasoned that the "actually litigated" requirement "indicates that concern for judicial economy is tempered by need for some assurance that resolution of issues in the first proceeding is reliable." *Id.* at 624–25.

The Bankruptcy Court for the Northern District of Indiana has taken a different view. That Court held that the "actually litigated" requirement is satisfied "whenever, after a party has appeared in an action and contested an issue, that issue is presented to the court for a decision based upon the facts or evidence put before it." *In re Staggs,* 178 B.R. 767, 778 (Bankr.N.D.Ind.1994), *aff'd,* 177 B.R. 92 (N.D.Ind.1995). Under *Staggs,* no inquiry need be made by the Bankruptcy Court into the extent of the opposition to summary judgment. *Staggs* does require, however, that the facts determined by summary judgment first be "put in issue" by the parties, by the pleadings or otherwise, before a state court judgment is given collateral estoppel effect. There, the Court held that the relevant facts had been put in issue by the pleadings when the defendant filed an answer denying the plaintiff's allegations. *Staggs,* 178 Bankr. 767, 775 (citing Restatement (Second) of Judgments § 27, comment d.).

---

1. In *Commonwealth v. Hale,* 618 F.2d 143, 146 (1st Cir.1980), the First Circuit noted, but did not address, the question whether the doctrine of collateral estoppel could properly be invoked where the prior judgment was entered by default.

A post-*Dvorak* decision by the Bankruptcy Court for the Northern District of Illinois, *In re Wien*, 155 B.R. 479 (Bankr.N.D.Ill.1993), rejects the narrow interpretation of "actually litigated" endorsed by the *Dvorak* Court, holding that if a debtor is unsatisfied with a judgment which might bind him in later proceedings, his remedy is an appeal, not relitigation of the matter in another court. *See also, In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir.1983) (collateral estoppel appropriate where a state court judgment was entered pursuant to an unopposed motion for summary judgment); *In re Tsamasfyros*, 940 F.2d 605, 607 (10th Cir.1991) (collateral estoppel appropriate where debtor appeared pro se in state court action); *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981).

Each of these views has merit: *Dvorak* is properly concerned with the reliability of the previous determination, *Staggs* with fairness to creditors and judicial economy, and *Wien* with the integrity of the doctrine of collateral estoppel. To determine the relative importance of these considerations, however, it is necessary to consider the context in which we are asked to apply them: a bankruptcy proceeding.

Acknowledging the 'fresh start' policy of the Bankruptcy Code in *Grogan*, the Supreme Court reconfirmed that:

> a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'

*Grogan*, 498 U.S. at 286, 111 S.Ct. at 659 (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). The Court continued:

> But in the same breath that we have invoked this 'fresh start' policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.'

*Id.* 498 U.S. at 286–87, 111 S.Ct. at 659 (quoting *Local Loan Co.*, 292 U.S. at 244, 54 S.Ct. at 699).

▬ In determining the preclusive effect of a previous judgment, therefore, a bankruptcy court must keep in mind the Code's distinction between debtors who are "honest but unfortunate" and those who are not. While this determination does not demand a fresh adjudication of the merits of the previous action, it does require that the bankruptcy court actually review the proceedings that culminated in the previous court judgment to determine if the issues presented there were "actually litigated". This review, already required by some bankruptcy courts,[2] will enable courts to evaluate each set of facts in light of the equitable "fresh start" policy described by the *Grogan* court. If a motion for summary judgment in a previous proceeding was not in *fact* opposed, the bankruptcy court must consider whether the failure to oppose was consistent with the actions of an "honest but unfortunate debtor." If so, the judgment at issue should not preclude further litigation. Therefore, where a debtor can demonstrate a good faith excuse for his neglect of the previous proceeding, and furnishes evidence that the debt at issue is normally dischargeable under the Bankruptcy Code, the grant of summary judgment may not be unconditionally relied upon by the bankruptcy court. Where a summary judgment motion is in fact opposed, or where the debtor's neglect appears to have been a tactical decision to avoid the implications of a state court judgment,[3] the judgment may be relied upon without fear that an honest but

---

2. *See Wien*, 155 B.R. at 486 (a bankruptcy court usually reviews the entire record of an earlier proceeding when deciding whether a matter has been actually litigated for the purposes of collateral estoppel); *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981) (before applying the doctrine of collateral estoppel, the bankruptcy court should look at the entire record of the state proceeding, not just the judgment, and hold a hearing if necessary).

3. This was one concern of the Bankruptcy Court below. During litigation of CCN's summary judgment motion in that Court, Judge Hillman asked counsel for Mr. and Mrs. Polechronis, "your theory is that you can lie down and play dead [in the superior court] and then come into this Court and say you didn't have an opportunity to defend?" Hearing transcript at 4.

unfortunate debtor is being denied his or her 'new beginning' under the bankruptcy laws.

Here, the bankruptcy court failed to undertake any such inquiry. Instead, the court mistakenly assumed that any summary judgment—even one in a case in which no answer was ever filed by the defendants and no opposition mounted to the motion—automatically precludes relitigation of the issues determined by the judgment.[4]

Accordingly, the bankruptcy court's grant of summary judgment is reversed, and the matter is remanded for a determination by an evidentiary hearing or otherwise whether the Plymouth Superior Court proceeding was "actually litigated" in light of the factors discussed above, and in particular, whether the debtors had a good faith excuse for permitting their default to occur and could have established a meritorious defense to the charges against them in that court.

---

4. The Polechronises have submitted affidavits stating that they failed to defend the state court lawsuit because they were unable to afford counsel. This court does not decide that their assertions, without more, constitute a reasonable excuse for their failure to defend the superior court proceeding. Moreover, they have yet to furnish evidence that they did not commit the offenses described in CCN's Superior Court complaint.